STATE of Missouri, Plaintiff–Respondent,

v.

Billy Joe MAGGARD, Defendant–Appellant.

No. 19063.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 3, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 24, 1995.

Application to Transfer Denied
Oct. 24, 1995.

John M. Schilmoeller, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Judge.

Billy Joe Maggard (defendant) was convicted of assault in the second degree, a class C felony.[1] § 565.060.1(4).[2] He was sentenced to imprisonment for a term of two years and payment of a fine in the amount of $500.

Defendant appeals his conviction contending the state was collaterally estopped from charging him with the offense for which he was found guilty because a prior charge of the same offense had been dismissed. Defendant also contends there was not sufficient evidence from which a jury could find him guilty. This court affirms.

On the morning of March 21, 1990, defendant and another man purchased beer at Julie's APCO Convenience Store in Greene County. Several hours later defendant returned to the store. He walked inside the store, stood there briefly, then approached a clerk, Sherry Vaughn. He told her she was sweet, offered to shake her hand and then left the building.

Ms. Vaughn observed that defendant was intoxicated. His eyes were bloodshot. He staggered when he walked and smelled of alcohol.

After defendant left the convenience store, Ms. Vaughn saw him drive away in a pick-up truck. Her car was parked on the parking lot in front of the store. She was concerned that he might drive his vehicle into it. She estimated defendant's pickup missed her parked car by "less than a foot."

After leaving the convenience store, defendant drove along Farm Road 163. About one mile beyond the store, he overtook four children with bicycles, Shawn Crow, Shawn's sister, Patricia (Tish), a brother, Ricky, and a friend who lived nearby, Everett. Shawn was six years old. Tish was nine.

The children were walking, pushing bicycles up a hill. They were proceeding in the same direction in which defendant was travelling. The children were on the left side of the road. As defendant's pick-up approached, they moved into the ditch along the left side of the road. Ricky's bicycle was to his right, between him and the road.

Tish was asked the following questions about what happened and gave the following answers:

Q. So you're going up the hill. What happened?

---

1. Defendant was also charged with leaving the scene of an accident. § 577.060, RSMo Supp. 1989. He was found not guilty of that offense.

2. References to statutes are to RSMo 1986 unless stated otherwise.

A. We was on our way up the hill and a truck was coming, so we got in the ditch, and then when the truck got closer it swerved over and it struck Shawn.

Q. What side of the road was the truck on?

A. At first?

Q. Yeah, before it—

A. The right side.

Q. Meaning the side of the road—on the other side of the road from where you were at?

A. Yes.

.      .      .      .      .

Q. So Shawn was in front of you. Where was he at in relationship to the road?

A. He was in the ditch.

Q. What about his bicycle?

A. His bicycle was on the other side of him by the road.

.      .      .      .      .

Q. ... Was the bicycle in the ditch or was it on the road?

A. In the ditch, but it was closer to the road than Shawn was.

.      .      .      .      .

Q. All right. Now, this truck, what happened?

A. Well, it struck Shawn and then it kept going.

Q. And before it struck Shawn was it on your side of the road or the other side of the road?

A. The other side of the road.

Q. What happened? How did it get to your side?

A. It swerved over.

Q. All right. And how far off the road, or did it get off the road at all when it hit Shawn?

A. It got off the road a little bit.

Defendant's pick-up struck Shawn's bicycle, knocking it into Shawn. The truck did not stop.

Shawn was wearing blue jeans. His jeans were ripped. His knee was bruised and swollen. He had scrapes, cuts and bruises on his shoulders, his back and head. His groin area was bruised.

An ambulance and Deputy Sheriff Richard Post were called. Officer Post is a patrolman with the Greene County Sheriff's Department.

Tish described the pick-up truck that had struck Shawn and its driver to Officer Post. He also learned of another accident about one mile away. He went to the location of the other accident. Defendant was there. Defendant told Officer Post he had driven his pick-up truck into a tree.

Defendant appeared to be intoxicated. His breath smelled of alcohol. His eyes were bloodshot and watery, his speech slurred, and he had difficulty walking. He was belligerent and uncooperative.

Defendant was arrested and placed in Officer Post's patrol car. Tish had been brought to the scene of the second accident. She saw defendant in the patrol car and identified him as the driver of the pick-up that struck Shawn.

The state initially filed a complaint accusing defendant of committing the offense that is the subject of this appeal. A preliminary hearing was held and defendant was bound over for trial. Later, the state entered a *nolle prosequi.*

After the state's *nolle prosequi*, defendant's case was presented to a grand jury. The grand jury returned an indictment and defendant was again charged with committing the offense. Defendant filed a motion to suppress evidence. It was granted. The state entered a second *nolle prosequi.*

The case was presented to a second grand jury. Defendant was again indicted. He

was tried and convicted. It is that conviction from which defendant appeals.

Prior to trial defendant filed a motion to dismiss the indictment. It was denied. During trial he filed motions for judgment of acquittal. Those motions were denied.

In Point I, defendant contends the trial court erred in denying the motion to dismiss the indictment and the motions for acquittal. He contends the state was collaterally estopped from charging him with the offense for which he was found guilty because it is the same offense that was previously dismissed.

In *State v. Pippenger,* 741 S.W.2d 710 (Mo.App.1987), the Western District of this court held:

To determine whether collateral estoppel is appropriate the court reviewing its application must consider:

(1) whether the issue decided in the prior adjudication was *identical* with the issue presented to the present action: (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication. Most courts have added a fourth factor to the three enunciated ...: whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. Fairness is the overriding consideration in determining whether or not to apply the Doctrine of Mutuality. (Emphasis supplied.) (Citations omitted.)

*Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713, 719 (Mo. banc 1979); *see also Burton v. State,* 726 S.W.2d 497, 499 (Mo. App.1987).

*Id.* at 711.

▪ Here, as in *Pippenger,* there was no prior adjudication that *resulted in a judgment on the merits. Id.* A trial court's ruling on a pretrial motion to suppress evidence is interlocutory. *State v. Howell,* 524 S.W.2d 11, 19 (Mo. banc 1975). The fact that the state previously chose to *nolle prosequi* the same case against defendant after a trial court granted a motion to suppress evidence, rather than to appeal the ruling, is of no consequence. *State v. Beezley,* 752 S.W.2d 915, 917–18 (Mo.App.1988). Point I is denied.

Point II contends the trial court erred in denying defendant's motions for judgment of acquittal at the close of the state's evidence and at the close of all the evidence and in sentencing defendant because there was not sufficient evidence from which a jury could find defendant guilty "in that the state failed to produce sufficient evidence from which a jury could find beyond a reasonable doubt that [defendant] operated his motor vehicle while in an intoxicated condition."

Section 565.060.1, as applicable to this case, states:

A person commits the crime of assault in the second degree if he:

. . . . .

(4) While in an intoxicated condition or under the influence of controlled substances or drugs, operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause physical injury to any other person than himself;

. . . . .

Point II is directed to the element of the offense that requires a finding that defendant was intoxicated at the time he operated the motor vehicle that caused Shawn to be injured. Defendant does not challenge the sufficiency of the evidence with respect to any other element of the offense.

▪ Evidence in a criminal trial is sufficient to support a fact that must be found for conviction if "a reasonable juror, taking all evidence in the light most favorable to the State, would be convinced beyond a reasonable doubt." *State v. Grim,* 854 S.W.2d 403, 406 (Mo. banc 1993).

Whether a defendant is intoxicated may be proven by any witness who had a reasonable opportunity to observe him. *State v. McCarty*, 875 S.W.2d 622, 623 (Mo. App.1994); *State v. Corum*, 821 S.W.2d 890, 891 (Mo.App.1992).

> [I]ntoxication is a " 'physical condition usually evidenced by unsteadiness on the feet, slurring of speech, lack of body coordination and an impairment of motor reflexes.' " [*State v. Ruark*, 720 S.W.2d 453 (Mo.App.1986) ] at 454 (quoting *State v. Blumer*, 546 S.W.2d 790, 792 (Mo.App. 1977)).

*State v. McCarty, supra.*

Sherry Vaughn saw defendant shortly before his pick-up truck struck Shawn's bicycle. She testified that defendant appeared intoxicated at that time. He was unsteady on his feet. He smelled of alcohol. His speech was slurred.

At the time of the accident, defendant was driving erratically. He drove his pick-up onto the wrong side of the roadway and partially off the roadway prior to striking Shawn's bicycle.

Officer Post saw defendant shortly after the accident. He testified that defendant appeared intoxicated. Defendant's breath smelled of alcohol. His eyes were bloodshot and watery. His speech was slurred and he had difficulty walking. Defendant was belligerent and threatened Officer Post at the scene of the second accident, as well as in the patrol car when defendant was being transported to the sheriff's office following his arrest.

Considering all the evidence in its most favorable light to the state, it was sufficient to convince a reasonable juror, beyond a reasonable doubt, that defendant was intoxicated at the time he drove his pick-up truck and struck Shawn's bicycle thereby injuring Shawn. Point II is denied. The judgment of conviction is affirmed.

GARRISON, P.J., and PREWITT, J., concur.