**STATE of Missouri, Respondent,**

v.

**Susan M. FALCONE, Appellant.**

**No. 20412.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 5, 1996.

Dewayne F. Perry, Asst. Public Defender, Joplin, for appellant.

Wendy E. Garrison, Asst. Pros. Atty., Newton County, Neosho, for respondent.

CROW, Judge.

The sole issue on appeal in this judge-tried case is whether the evidence was sufficient to support Appellant's conviction of driving while intoxicated where the prosecution's theory was that Appellant operated a motor vehicle while in a drugged condition.

Section 577.010.1 [1] reads:

"A person commits the crime of **'driving while intoxicated'** if he operates a motor vehicle while in an intoxicated or drugged condition."

Section 577.001.2 reads:

"As used in this chapter, a person is in an **'intoxicated condition'** when he is under the influence of ... a ... drug...."

Neither side cites a case specifically addressing the issue confronting us.

 Under Art. I, § 22(a), Mo. Const. (1945), and Rule 27.01(b), Missouri Rules of Criminal Procedure (1995), the trial court's

---

1. References to statutes are to RSMo 1994 except where otherwise indicated.

findings have the force and effect of a jury verdict. *State v. Northern,* 472 S.W.2d 409, 411 (Mo.1971). Consequently, we review this case as though a jury had returned a verdict of guilty. *State v. Giffin,* 640 S.W.2d 128, 130[1] (Mo.1982). In determining the sufficiency of the evidence to support the conviction, we accept as true all evidence tending to prove guilt, together with inferences favorable to the State that can be reasonably drawn therefrom, and disregard all contrary evidence and inferences. *Id.* at 130[2]. We do not weigh the evidence, *State v. Wilson,* 846 S.W.2d 796, 797[2] (Mo.App.S.D.1993), but determine only whether there was sufficient evidence from which the trial court could have reasonably found Appellant guilty beyond a reasonable doubt. *State v. Owen,* 869 S.W.2d 310, 311[2] (Mo.App.S.D.1994).

At 8:56 p.m., March 27, 1995, Trooper Bruce Klier of the Missouri State Highway Patrol arrived at a site in Newton County where a motor vehicle operated by Appellant had struck a bridge a few minutes earlier. Klier observed Appellant in the damaged vehicle "talking to herself, acting very strangely."

Klier asked Appellant what happened. Appellant responded: "My car just started spinning. I must have hit an oil slick."

Appellant denied she had been drinking. Klier "couldn't smell any odor of an alcoholic beverage."

Someone at the scene handed Klier "an empty bottle of a prescription drug called Lorazepam." Klier asked Appellant whether she had taken any. According to Klier, Appellant replied she had taken it "three times a day just like the doctor told her." Appellant believed her last dose was "around 7:00," but she "wasn't sure."

Klier asked Appellant to exit her vehicle and perform some "field sobriety tests." As Appellant stepped out, Klier noticed she "started swaying immediately like her balance was unsteady."

Klier had Appellant perform the "walk-and-turn test" and the "one leg stand test." She failed both.

Klier then administered the "gaze nystagmus test." Asked the results, Klier testified:

"She only had two points on the gaze nystagmus. She had a distinct nystagmus of maximum deviation; which is, you have them follow your finger clear out to the side, and there was a distinct jerking at the maximum as far as her eyes would go.... [T]here's six points to the gaze nystagmus test. And you determine if they have four points that they're over the legal limit of alcohol. She only had two points, so if she would have been drinking, I would have said she wouldn't have been over the legal limit."

Following the tests, Klier arrested Appellant for driving while intoxicated. Klier's testimony continued:

"Q. Was she given a breathalyzer?

A. Yes, she was.

Q. And do you know what the results of that was?

A. Zero, zero."

Under supervision of a female correctional officer, Appellant supplied a urine specimen at 9:46 p.m. It was later tested by the director of the "MSSC Regional Crime Lab" in Joplin.

The director, a chemistry professor, detected "the presence of Phenobarbital; caffeine and nicotine." The director also "got a presumptive test for presence of benzodiazepine," but could not "identify the specific drug."

Asked about Lorazepam, the director testified:

"Lorazepam is a specific drug that's one of a number of compounds that are known as benzodiazepines, in general.... [B]enzodiazepines are a class of drugs. In addition to Lorazepam, there's also Diazepam, chlordiazepoxide and several others."

On the issue of whether his findings established that Appellant was intoxicated at the time she furnished the urine specimen, the director's testimony was:

"Q. Can you render an opinion, as based on what you found in the urine sample you had, as to whether or not that particular individual was intoxicated on benzodiazepine? ...

A. No, sir.

Q. Could you say whether that person would have been in any way impaired from driving an automobile?

A. ... I don't have levels, and I can't say in this specific case. In general terms, both the Phenobarbital and whichever benzodiazepine act as a sedative, sort of in a sedative fashion.

Q. So on a certain amount, it may, in fact, impair and intoxicate someone, correct?

A. Correct.

Q. But you couldn't say whether or not this was enough?

A. ... Both the Phenobarbital and whatever benzodiazepine was there were above the threshold levels that we use, which are indications that, above these levels, there is normally an effect on— on sensory and motor perception."

The prosecutor rested upon completion of the director's testimony. Appellant was the only defense witness. She attributed her condition at the accident site and her performance on the field sobriety tests to a blow on the head she received in the accident and to injuries inflicted on her by her husband during recent beatings.

Appellant cites only one case as authority for her claim that the evidence was insufficient to support the conviction: *State v. Valerius*, 672 S.W.2d 726 (Mo.App.E.D.1984). There, the Eastern District of this Court applied § 577.037, RSMo Supp.1982,[2] and held the evidence insufficient to support a conviction of driving while intoxicated.

According to *Valerius,* the 1982 version of § 577.037 created a rebuttable presumption of no intoxication if a person had less than .05 percent alcohol in his blood at the time of a Breathalyzer test. 672 S.W.2d at 728. In *Valerius,* the alcohol in the accused's blood was insufficient to move the Breathalyzer needle from .00 percent to .01 percent, *id.* at 727, thereby raising the presumption of no intoxication. The appellate court held there was no proof to rebut that presumption,

hence the evidence was insufficient to support the conviction. *Id.* at 728.

There is a fundamental difference between *Valerius* and the instant case. The opinion in *Valerius* points out:

"Nor has the state shown that defendant was in a drugged condition, the alternative charge under § 577.010.1 RSMo 1978. The police report indicates that no drugs ... were found...."

*Id.* at 728.

It is obvious from the above passage that the prosecution in *Valerius* made no attempt to prove the accused drove in a drugged condition. Consequently, because the prosecution failed to prove the accused was intoxicated from alcohol, the conviction in *Valerius* had no evidentiary support.

In contrast, the prosecutor in the instant case made no effort to prove Appellant was intoxicated from alcohol. The conviction here hinges on whether the evidence was sufficient to support a finding, beyond a reasonable doubt, that Appellant drove in a drugged condition.

We find no Missouri case listing criteria for proving a driver is in a "drugged condition" within the meaning of 577.010.1. Section 577.001.2, quoted at the start of this opinion, is scant help, as it tells us only that a person is in an "intoxicated condition" when he is "under the influence" of a drug. The degree to which one must be affected by a drug to be "under the influence" of it is not spelled out.

However, in 1933 the Supreme Court of Missouri, in a case where the accused was charged with driving while in an intoxicated condition and the evidence showed the source of intoxication was alcohol, held:

"Any intoxication that in any manner impairs the ability of a person to operate an automobile is sufficient to sustain a conviction.... A jury would readily understand that what is meant by an 'intoxicated condition' in connection with a charge of this nature is drunkenness to such an extent that it interferes with the proper operation of an automobile by the defendant."

Pertinent provisions of it are quoted later in this opinion.

---

**2.** The version of § 577.037 in effect when Appellant was arrested is the version in RSMo 1994.

*State v. Raines*, 333 Mo. 538, 62 S.W.2d 727, 729 (1933). *Accord: State v. Cox*, 478 S.W.2d 339, 341–42[5, 6] (Mo.1972).

■ Applying *Raines* and *Cox*, we hold that if Appellant was under the influence of Lorazepam to the extent that it impaired her ability, in any manner, to operate her vehicle, she was in a drugged condition and consequently guilty of driving while intoxicated as proscribed by § 577.010.1. Our application of *Raines* and *Cox* is consistent with the following passage in *State v. Meanor*, 863 S.W.2d 884, 888 (Mo. banc 1993);

"Other jurisdictions having statutes similar to Missouri's have concluded that the proof required to establish driving under the influence of drugs should be no greater and no different from the proof required to establish driving under the influence of alcohol, other than the evidence must relate to the particular substance involved. There is no reason why the same level of proof should not suffice to support a conviction for driving under the influence of drugs.' *Harris v. District of Columbia*, 601 A.2d [21] at 27 [ (D.C.App.1991) ]."

Having determined what the evidence had to establish to support Appellant's conviction, we now consider whether the evidence did so. Appellant reminds us that this issue must be addressed within the framework of § 577.037 which provides, in pertinent part:

"5. Any charge alleging a violation of section 577.010 ... shall be dismissed with prejudice if a chemical analysis of the defendant's ... urine ... demonstrate [sic] that there was less than ten-hundredths of one percent of alcohol in the defendant's blood unless one or more of the following considerations cause the court to find a dismissal unwarranted:

. . . .

(2) There is evidence that the defendant was under the influence of a controlled substance, or drug, or a combination of either or both with or without alcohol; or

(3) There is substantial evidence of intoxication from physical observations of witnesses or admissions of the defendant."

■ Inasmuch as there was no evidence of alcohol in Appellant's blood, the above statute exonerates her of driving while intoxicated unless the requirements of either subdivision 2 or subdivision 3 of subsection 5 are met.

As to subdivision 2, the laboratory analysis of Appellant's urine revealed the presence of benzodiazepine.[3] Although the director was unable to identify the specific drug, he explained that Lorazepam is a drug in the benzodiazepine class.

There was direct evidence that Appellant had ingested Lorazepam. As reported earlier, she told Klier she had taken it three times a day, the last dose being "around 7:00."

As to the requirement in subdivision 2 that there be evidence that Appellant was under the influence of the drug, we note the director testified that the benzodiazepine in Appellant's urine was above the "threshold" level which normally indicates an effect "on sensory and motor perception."

As to the requirement in subdivision 3 that there be substantial evidence of intoxication from physical observations of witnesses, we have previously recounted Klier's testimony that Appellant was talking to herself, acting strangely, and failed two of the field sobriety tests. Although Appellant attributed her behavior and physical ineptitude to a blow on the head in the crash and injuries inflicted by her husband, the trial court was not required to believe that testimony. *Wilson*, 846 S.W.2d at 798[7]. As the trier of fact in a judge-tried criminal case, the trial court can believe all or part of a witness' testimony and reject the rest, and can disbelieve testimony even if uncontradicted. *State v. Martin*, 850 S.W.2d 421, 422[3] (Mo.App.S.D.1993).

In assessing Appellant's credibility, the trial court had to weigh her explanation against testimony by Klier that Appellant mentioned no head injury to him, refused medical treat-

---

3. We learn from *Webster's Third New International Dictionary* 59a (Merriam–Webster Inc. 1986) that benzodiazepine is "any of a group of aromatic lipophilic amines (as diazepam and chlordiazepoxide) used as tranquilizers."

ment, and did not limp when she walked. Furthermore, recalled Klier, Appellant "kept walking out in the traffic, and I had to grab her three times to keep her from walking out in the lane of traffic."

We hold the evidence favorable to the prosecution in the five preceding paragraphs satisfied subdivisions 2 and 3 of subsection 5 of § 577.037. Accordingly, Appellant was not entitled to a dismissal even though there was no evidence that she had any alcohol in her blood.

That holding implicitly rejects Appellant's final contention, i.e., that the evidence was insufficient to support the conviction because no witness expressed an opinion that she was intoxicated. Appellant cites *Valerius*, 672 S.W.2d 726, to support her belief that such an opinion was required for a finding of guilty.

We do not read *Valerius* that way. As explained earlier, the prosecution in *Valerius* attempted to prove the accused was intoxicated from alcohol. However, the alcohol level shown by the Breathalyzer fell within the statutory presumption of no intoxication. Because the prosecution in *Valerius* failed to rebut that presumption with opinion testimony that the accused was intoxicated, the conviction had no evidentiary support. 672 S.W.2d at 728. The opinion emphasized that the prosecution made no attempt to prove the accused was in a drugged condition. *Id.* Consequently, *Valerius* does not specify what evidence is required to support a conviction on that theory.

In *Meanor*, 863 S.W.2d 884, the driver of a motor vehicle caused a catastrophic collision in which one person died and another was seriously injured. Analysis of the driver's blood showed an alcohol content of .02 percent. *Id.* at 887. The blood sample was insufficient to be tested for the presence of drugs. *Id.*

The prosecution's theory in *Meanor* was that the driver was under the combined influence of alcohol and a controlled substance: marijuana. *Id.* at 886. The Supreme Court of Missouri held:

"Where there is evidence that a person has recently consumed alcohol and marijuana and is then observed exhibiting signs of impaired judgment and motor skills consistent with intoxication, reasonably intelligent jurors may conclude that the cause of the impairment is the combined effects of alcohol and marijuana."

*Id.* at 888.

In the instant case there was evidence that Appellant had recently ingested Lorazepam, a drug in the benzodiazepine classification, in an amount that normally affects one's sensory and motor perception. Additionally, there was testimony by Klier that he observed Appellant exhibiting signs of impaired judgment and motor skills consistent with intoxication. The evidence in the two preceding sentences fits the requirements of *Meanor* in the passage quoted above. Accordingly, we hold the trial court could reasonably find from such evidence, beyond a reasonable doubt, that the cause of Appellant's impairment was the Lorazepam.

Having held earlier that anyone who operates a motor vehicle when his ability to do so is impaired by a drug is guilty of driving while in a drugged condition, we hold the evidence sufficient to support Appellant's conviction. Her point relied on is denied, and the judgment is affirmed.

PREWITT, P.J., and SHRUM, C.J., concur.