**STATE of Missouri, Respondent,**

v.

**Gary F. CLARKSTON, Appellant.**

**No. WD 54044.**

Missouri Court of Appeals,
Western District.

Feb. 24, 1998.

F. Randall Waltz, III, Waltz & Jordan, Jefferson City, for appellant.

Michael J. Yost, Asst. Pros. Atty., Cole County, Jefferson City, for respondent.

Before LAURA DENVIR STITH, P.J., and HANNA and RIEDERER, JJ.

LAURA DENVIR STITH, Presiding Judge.

Mr. Clarkston appeals his conviction of driving while intoxicated. He argues that the jury was improperly permitted to find him guilty if he was suffering from a reaction to a combination of alcohol and insulin, and that as a matter of public policy this should not provide a basis for conviction. He also argues that the evidence did not show that he had insulin in his system or that it contributed to his alleged intoxication. He further alleges that the trial court erred in permitting the police officers to inform the jury that

he had refused to take a breathalyzer test, because another court had already held that his driver's license could not be revoked based on this refusal since he was not given an adequate warning that his refusal would result in immediate revocation of his driver's license.

We find that Mr. Clarkston's refusal of the breathalyzer test and his refusal to perform various field sobriety tests was relevant and admissible to show his conduct and the basis on which the officers concluded he was intoxicated, despite the fact it could not be used as a basis for revocation of his license. We agree with Mr. Clarkston, however, that the instruction improperly permitted him to be convicted based on the mere fact that he took insulin and alcohol. While the expert evidence did show that alcohol and an overreaction to too much insulin could combine to cause intoxication, the evidence did not show that Mr. Clarkston was suffering from a reaction to too much insulin at the time of the accident; the evidence showed he had not taken insulin for fourteen and one-half hours, and further showed that the type of reaction he allegedly had could be caused by too much exercise or too little food, and not just by too much insulin. Accordingly, we reverse and remand for a new trial.

■ We caution, however, that in any new trial, the fact that Mr. Clarkston may have become intoxicated with alcohol more readily because of his diabetes is not a defense to the charge of alcohol intoxication, any more than would be any other claim that a person should not be found guilty of driving while intoxicated with alcohol just because the person becomes intoxicated easily due to his or her weight, metabolism, or other physical characteristics. If the evidence shows that Mr. Clarkston was, in fact, intoxicated by the amount of alcohol he imbibed, then he is guilty of driving while intoxicated with alcohol even if that amount of alcohol would not have made a non-insulin taking diabetic intoxicated.[1]

---

1. Of course, if the evidence had supported a claim that the insulin level in his blood in fact did combine with alcohol and that this combination is what caused him to be intoxicated, then the submission of driving while intoxicated with a combination of alcohol and a drug or drugs would have been proper.

## I. FACTUAL AND PROCEDURAL HISTORY

Gary Clarkston is a diabetic. His diabetes is controlled by insulin which his doctor has prescribed for him to take in the morning and in the evening. On December 28, 1995, he took his morning insulin at 7 a.m. He ate lunch at approximately 11:30 a.m. He cleaned carpets in Mr. Bill Clarkston's house until around 7:30 or 8:00 p.m. that evening. He then went to the Knights of Columbus where he drank some beer. Sometime between 9:30 p.m. and 10:00 p.m. that evening, Mr. Clarkston's Jeep Cherokee collided with the rear of a Ford van which had been stopped at an intersection. Michael Nilges, the driver of the Ford van, approached Mr. Clarkston's vehicle immediately after the accident. Mr. Clarkston stared "straight ahead and down" and failed to respond to Mr. Nilges.

Within five minutes of the accident, Police Officers Chris Lindsey and Douglas Shoemaker arrived at the scene. When Officer Shoemaker approached Mr. Clarkston's vehicle, Mr. Clarkston was sitting in the driver's seat with the door open and the vehicle still running. The officer noticed the smell of alcoholic beverages on Mr. Clarkston and asked Mr. Clarkston to look at him. He noticed that Mr. Clarkston's eyes were watery, glassy, and bloodshot. Officer Shoemaker performed the horizontal gaze nystagmus test, which Mr. Clarkston failed. Mr. Clarkston refused to take any other field tests, claiming he was "too drunk." He also refused to submit to a chemical breath test. When Officer Shoemaker asked Mr. Clarkston whether he had been drinking, Mr. Clarkston responded that he had drunk eight or nine beers. Mr. Clarkston told Officer Lindsey, however, that he had drunk only two beers during the evening. After he was arrested, when asked about this discrepancy, Mr. Clarkston explained that he had drunk eight or nine beers at home and then two more at the Knights of Columbus.

### A. Revocation of License and Motions in Limine.

The Director of Revenue revoked Mr. Clarkston's driver's license for refusing to submit to a breath test for blood alcohol content. On February 14, 1996, in *Clarkston v. Director of Revenue*, CV396–19AC, this revocation was set aside by the court below based on a failure to adequately warn Mr. Clarkston that his license would immediately be revoked if he refused to consent to this test. Although the case on which the court relied in reaching this result has since been overruled, the propriety of that decision is not before us on this appeal.

On March 5, 1996, Mr. Clarkston was charged by information with the class A misdemeanor of driving while intoxicated under the influence of alcohol. Mr. Clarkston filed a motion requesting the suppression of:

[a]ny evidence of or testimony about defendant's alleged refusal to submit to a chemical breath test for blood alcohol content on or about December 28, 1995. This prejudicial evidence is inadmissible and collaterally estopped from being admitted into evidence because this court in *Gary F. Clarkston v. Janette Lohman, Director of Revenue*, Case No. CV396–19AC, ruled on February 14, 1996, that defendant did not refuse to submit to the chemical breath test for reasons stated in the court's judgment entry, a true copy of which is attached hereto and identified as Exhibit A.

Mr. Clarkston's motion further asked, *inter alia*, to suppress statements or admissions made by the defendant, because they were involuntarily made, and testimony concerning the horizontal gaze nystagmus test, "unless it [could] be shown the officer was properly trained, the test correctly given, and the results accurately interpreted." This motion was overruled, after a hearing, on July 30, 1996.

On December 5, 1996, an amended information was filed, charging Mr. Clarkston with the class A misdemeanor of driving while intoxicated while under the influence of alcohol and a combination of alcohol and insulin. On December 10, 1996, Mr. Clarkston filed a second motion to suppress and/or exclude evidence. At this time, Mr. Clarkston also filed a request for specific findings and rulings on the voluntariness of statements he had made. On December 11, 1996, the court held a hearing on this second mo-

tion. Mr. Clarkston testified that he did not know whether he had made the statements he allegedly made to the police because at "that time I'm under the impression of a[sic] insulin reaction, and sometimes I say things and you can tell me I did something or I was somewhere, and I wouldn't have the slightest idea what you're talking about." He further testified that he was a Type I diabetic, took insulin, and had a history of insulin shock, or "neuroglycopenic reactions." The court denied the motion.

### B. Expert Testimony as to Effects of Insulin.

The trial began on December 11, 1996. In his opening statement, the prosecutor stated that "at the very least, [Mr. Clarkston] was under the influence of alcohol and a reaction with insulin. [It is the] State's contention that there was no insulin reaction, but at the very least the alcohol combined with his insulin reaction to make him intoxicated, which is enough for you to find him guilty." Officer Shoemaker testified that Mr. Clarkston had told him he was an insulin-taking diabetic, and that he had last taken his insulin at 7:00 a.m. the morning of the accident.

The defense read the deposition of Peter Boyer, Mr. Clarkston's physician, into evidence. This testimony indicated that Mr. Clarkston was a Type I diabetic for whom Dr. Boyer had prescribed insulin to be taken in the morning and in the evening. Dr. Boyer also testified that Mr. Clarkston had previously had problems with hypoglycemia caused by his diabetes. He testified that an insulin-taking diabetic could have two types of hypoglycemic reactions from a number of causes, including a reaction to taking too much insulin, eating too little food while taking insulin, and exercising too much in light of one's food and insulin level. Dr. Boyer testified that Mr. Clarkston has had both types of hypoglycemic reactions. The first

makes the person weak, feel shaky, and have headaches; the person can recognize these symptoms and make them go away by eating sugar. The second reaction, called neuroglycopenia, occurs more rarely, but it occurs without prior warning. Because its symptoms may mimic those of intoxication, Dr. Boyer said it "is recommended that a Type I diabetic wear identification because it can be misinterpreted as intoxication, the reaction they have." [2]

Dr. Boyer was also asked about the synergistic effects, if any, of alcohol and insulin. He testified that the fact a person takes insulin would not directly increase the effect of alcohol on the person, but would increase the level of sugar in the blood. Therefore, if a person is having a hypoglycemic reaction from too much insulin, too little food or too much exercise, even a very small amount of alcohol could cause him to become very intoxicated. Paraphrasing, Dr. Boyer said that if an insulin-taking diabetic is having a hypoglycemic (low blood sugar) reaction from either too much insulin, too much exercise or lack of food, then the person could appear to be intoxicated even though they had only a little alcohol, so that their blood alcohol level was below the legal limit. The doctor did not state that the converse is true, that is, that just a little insulin could cause this type of reaction if mixed with alcohol. Either a large amount of insulin or else low blood sugar caused by too much exercise or too little food is necessary for this reaction with alcohol. The doctor concluded, "you can have an insulin reaction with any amount of alcohol because it may not be related. You could be having symptoms from one, either or both, and the combination of the two could make the symptoms worse."

### C. Instruction on Guilt Based on Alcohol or Combination of Alcohol and Drugs.

The court submitted the case on Instruction No. 7, which had been offered by the

---

**2.** The definition of hypoglycemia in the *Diabetics Sourcebook* is "[t]oo low a level of glucose (sugar) in the blood. This occurs when a person with diabetes has injected too much insulin, eaten too little food, or exercised without extra food." **3 *Diabetes Sourcebook* 25 (Karen Bellenir & Peter Dresser Eds.1994).** Neuroglycopenia is defined as "chronic hypoglycemia of a degree sufficient to impair brain function, resulting in personality changes and intellectual deterioration." ***Dorland's · Illustrated Medical Dictionary* 1130 (28th ed.1994).** Mr. Clarkston apparently presented this evidence in support of his defense that he was not intoxicated, but rather was having this reaction which mimicked alcohol intoxication.

State. It stated in relevant part that the jury could find Mr. Clarkston guilty if it found beyond a reasonable doubt that he had operated a motor vehicle in an intoxicated condition. It then stated, *"As used in this instruction, the term 'intoxicated condition' means under the influence of alcohol or a combination of alcohol and a drug or drugs."* (emphasis added).

Mr. Clarkston objected to the submission of this instruction, arguing that "there is absolutely no evidence whatsoever, Your Honor, that the combination of alcohol and insulin had any effect. The combination of alcohol and blood sugar—low blood sugar can have an effect, but they've chosen to charge insulin. And rather it's the lack of insulin that's the problem. The State has got it" wrong. The objection was overruled.

After trial, the jury found Mr. Clarkston guilty "of driving while intoxicated as submitted in Instruction No. 7." Mr. Clarkston's Motion for New Trial was denied. This appeal followed.

## II. COLLATERAL ESTOPPEL

■ In his first Point Relied On, Mr. Clarkston claims that the trial court erred in overruling his motion to suppress evidence of his alleged refusal to submit to a chemical breath test for blood alcohol content because collateral estoppel operates as a bar, since the trial court, in a civil proceeding concerning revocation of his license, had ruled that Mr. Clarkston did not legally refuse this test for blood alcohol content. The State replies that collateral estoppel does not bar this evidence, because it applies only if there is an identity of the thing sued for in the two cases, and "no identity of the thing sued for" exists between a civil administrative proceeding to revoke a license and a criminal prosecution for driving while intoxicated.

■ As we found in *Hoyt,* a revocation of license is not the same as a criminal prosecution for driving while intoxicated; "the administrative review is remedial in nature and not to punish the individual. These two actions do not invoke the identical 'thing sued for'." *State v. Hoyt,* 922. S.W.2d 443, 447 (Mo.App.1996). "The finding of fact by the

administrative body in a license revocation proceeding has no collateral estoppel or res judicata effect in a subsequent criminal prosecution." *Id.,* citing,*State v. Warfield,* 854 S.W.2d 9, 11 (Mo.App.1993).

This rule applies equally where, as here, the circuit court set aside the Director of Revenue's revocation of Mr. Clarkston's license because of a failure to tell him his license would be immediately revoked. Mr. Clarkston did, in fact, refuse to take the test, just as he refused to take two of the three field tests which the officers asked him to take. These refusals made it more difficult for the officers to assess the level of Mr. Clarkston's intoxication, and forced them to rely on other factors, such as his manner, the smell of alcohol, his failure of the horizontal gaze nystagmus test, his admissions that he had drunk eight or nine beers, and so forth. The fact that the refusal to consent to a breath test could not be used as a basis to revoke Mr. Clarkston's license did not make his refusal to take either the breath or field tests inadmissible for other purposes, such as to explain Mr. Clarkston's conduct and why the State did not have direct evidence of the level of alcohol or insulin in Mr. Clarkston's blood, and instead relied on other evidence of intoxication. Mr. Clarkston was, of course, free to explain that he refused the breath test only because he did not know it could result in the immediate loss of his license. We find no reversible error.

## III. ERROR IN SUBMITTING INTOXICATION BASED UPON COMBINATION OF ALCOHOL AND INSULIN

### A. Whether Public Policy Precludes Holding a Diabetic Liable If He Becomes Intoxicated from a Combination of Alcohol and Insulin.

■ In his second Point Relied On, Mr. Clarkston argues that the court erred in giving Instruction No. 7, because it allowed the jury to find him guilty of DWI if it found that he was suffering from a hypoglycemic reaction combined with a small amount of alcohol.

Mr. Clarkston argues that, as a matter of public policy, a Type I diabetic such as him-

self should not be guilty of DWI unless the person's blood alcohol content is above .10%. Otherwise, he says, we are in effect punishing an insulin-taking diabetic by making the latter guilty of a DWI in a situation in which a non-insulin taking diabetic or a non-diabetic would not be guilty.

We disagree. First, whether or not a person is diabetic, the person can be found guilty of driving while intoxicated if the person is in fact driving while intoxicated. As Missouri courts have noted on numerous occasions, one can be found guilty of DWI without direct proof of a blood alcohol content of .10%, for:

> Ten hundredths of one percent by weight of alcohol in the blood is a cold medical fact. Intoxication is a physical condition usually evidenced by unsteadiness on the feet, slurring of speech, lack of body coordination and an impairment of motor reflexes. [It] ... can be proven either by opinion evidence or by chemical analysis of blood, breath, saliva or urine ... Consequently, the presence of ten-hundredths of one percent by weight of alcohol in defendant's blood is not an essential element of the offense of driving while intoxicated.

*State v. Blumer*, 546 S.W.2d 790, 792 (Mo. App.1977). *See also State v. Maggard*, 906 S.W.2d 845, 849 (Mo.App.1995), and cases cited therein.

The fact that insulin is a prescription drug [3] is, thus, not a defense to DWI if it, in fact, causes intoxication either alone or in combination with alcohol. *State v. Walter*, 918 S.W.2d 927, 930 (Mo.App.1996). *See also, State v. Falcone*, 918 S.W.2d 288 (Mo. App.1996) (affirming a DWI conviction for driving while taking a prescription drug). We see no public policy reason why insulin-taking diabetics should be given protection that others are not. If a person becomes

intoxicated as a result of taking a medication, alone or in combination with alcohol, and drives while intoxicated, that person can be held guilty of driving while intoxicated unless the person proves the intoxication was involuntary.

Thus, if the evidence supports the allegation that the prescription drug insulin and alcohol combined to intoxicate the defendant, then Mr. Clarkston could be found guilty of DWI. There is no unfairness in this result just because it took less to intoxicate him than it might have taken to intoxicate a person who was not an insulin-taking diabetic.[4]

**B.** *Whether the Court Erred in Submitting Intoxication Based on a Combination of Alcohol and Insulin.*

Mr. Clarkston also argues that the evidence did not support the submission of intoxication based on a combination of alcohol and drugs, because there was "absolutely no evidence whatsoever ... that the combination of alcohol and *insulin* had any effect. The combination of alcohol and blood sugar—low blood sugar can have an effect, but they've chosen to charge insulin." This objection was overruled and the following instruction was submitted to the jury:

### INSTRUCTION NO. 7

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 28, 1995, in the 200 block of West McCarty, in the County of Cole, State of Missouri, the defendant operated a motor vehicle, and Second, that he did so while in an intoxicated condition, then you will find the defendant guilty of driving while intoxicated.

However, unless you find and believe from the evidence beyond a reasonable

3. Although insulin may be either a prescription or an over-the-counter drug, in this case it was apparently prescription, as Mr. Clarkston's physician testified that he prescribed a certain type and amount for Mr. Clarkston to take.

4. There was no evidence, nor was it suggested, that insulin by itself could cause a person to be intoxicated or that it is a drug a person would take to get intoxicated; in fact, there are serious

medical ramifications from taking too much insulin. There was evidence that a hypoglycemic reaction, which could be caused by too much insulin, could mimic intoxication. As the issue is not before this court, we express no opinion as to whether a person could be guilty of DWI from driving while under a reaction to too much insulin alone.

doubt each and all of these propositions, you must find the defendant not guilty of that offense.

*As used in this instruction, the term "intoxicated condition" means under the influence of alcohol or a combination of alcohol and a drug or drugs.*

If you do find the defendant guilty of driving while intoxicated, you must return a verdict finding the defendant guilty of the offense of driving while intoxicated.

(emphasis added).

### 1. MAI–CR3d Did Not Require Disjunctive Submission of Alcohol or a Combination of Alcohol and Drugs

■ The State's first argument as to why Instruction No. 7 was properly submitted is that MAI–CR3d 331.02 required giving this instruction in exactly this way, because MAI–CR3d 331.02 defines "intoxicated condition" as "under the influence of alcohol or a combination of alcohol and a drug or drugs" and, therefore, the trial court had no discretion to vary from this definition by omitting the terms referencing drugs. We disagree. Even if MAI–CR3d 331.02 required submission of both alcohol and drugs and alcohol, that instruction should not be followed if it does not correctly state the substantive law. *State v. Carson,* 941 S.W.2d 518, 520 (Mo. banc 1997).

In any event, a review of MAI–CR3d 331.02 reveals that it does *not* mandate that the State submit the intoxication issue in the manner submitted in Instruction No. 7. MAI–CR3d 331.02 states, in relevant part:

As used in this instruction, the term "intoxicated condition" means under the influence of (alcohol) ( [*name of controlled substance* ], a controlled substance) (a drug or drugs) (a combination of alcohol and ( [*name of controlled substance* ], a controlled substance) (a drug or drugs)).

The instruction, thus, leaves it up to the court to choose which of the parenthetical terms it should submit based on the evidence in the case. The evidence in one case may support the submission of alcohol, another drugs, another a controlled substance, another a combination of one or more of the above. Only those portions of the definition which are supported by the evidence in the case should be submitted, however, for all parts of an instruction " 'must be supported by substantial evidence and [the] reasonable inferences to be drawn therefrom.' " *State v. Howard,* 896 S.W.2d 471, 492 (Mo.App.1995) (citations omitted). Thus, if the evidence in the case shows solely the use of drugs, the instruction would not include alcohol in its definition of "intoxicated condition," and vice versa.

### 2. Evidence That the Defendant Had a Level of a Drug In His System Sufficient to Cause Intoxication is Required to Support the Submission of Intoxication with Drugs.

■ Where, as here, the court makes disjunctive submissions of intoxication from alcohol or intoxication from a combination of alcohol and a drug or drugs, then it follows that each part of the disjunctive submission must be supported by evidence. *Howard,* 896 S.W.2d at 492. Here, there was clearly sufficient evidence to support the instruction regarding intoxication by alcohol. A different situation exists with regard to the sufficiency of the evidence to support a submission of intoxication by a combination of alcohol and a drug or drugs.

To support the second aspect of the disjunctive submission, the State was required to present evidence from which the jury could find that Mr. Clarkston was under the influence of a drug which combined with the beers he drank to make him intoxicated. The only drug which it is claimed that he took was insulin.

■ As noted above, the fact that insulin is a prescription medication does not preclude a finding of intoxication from use of that medication. *See, e.g., Walter,* 918 S.W.2d at 930; *Falcone,* 918 S.W.2d at 288. This does not mean, however, that a conviction for intoxication with drugs can be based simply on the fact that Mr. Clarkston was taking insulin. To the contrary, *Falcone,* 918 S.W.2d at 292, and cases interpreting it require that, before intoxication with drugs can be submitted, the evidence must show that the drug can cause intoxication and that the

defendant had a sufficient level of the drug in his system to cause intoxication, either alone or when taken in combination with alcohol. In order to understand the application of this principle to this case, it is helpful to analyze *Falcone* and similar cases in more detail.

In *Falcone*, there was evidence that the defendant had ingested Lorazepam, a prescription drug, less than two hours before she was arrested. There was also expert testimony that the amount of drug in her system would normally effect one's "sensory and motor perception." While defendant offered an alternative explanation for her behavior, the court found that the trier of fact was free to disbelieve her in whole or in part. The Missouri Supreme Court held that " '[t]he proof required to establish driving under the influence of drugs should be no greater and no different from the proof required to establish driving under the influence of alcohol, other than *the evidence must relate to the particular substance involved.*' " *Id.,*quoting, *State v. Meanor,* 863 S.W.2d 884, 888 (Mo. banc 1993) (emphasis added). Because the evidence in *Falcone* related to the particular substance involved and showed that the defendant had a sufficient amount of the substance in her system to cause intoxication, it was sufficient to support a submission of driving while intoxicated with drugs. *Id. See also Meanor,* 863 S.W.2d at 886.

This Court recently applied the teachings of *Falcone* and *Meanor* in *State v. Friend,* 943 S.W.2d 800 (Mo.App.1997). In *Friend,* there was evidence that when the defendant was stopped he exhibited bizarre behavior. A test of his blood revealed that the defendant had methamphetamines in his system. However, we noted that:

> [d]rugs do not necessarily produce readily recognizable symptoms and behavior pat-

terns. We are left to speculate whether the level of [the drug charged] in the defendant's system was sufficient to cause the behavior described, and if so, whether the symptoms described were the result of [the drug] or some other cause.

*Friend,* 943 S.W.2d at 802. For that reason, we held that the evidence was insufficient to sustain the conviction, because there was "no evidence that the *level* of methamphetamines was sufficient to impair his driving ability." *Id.* at 803.

### 3. The Evidence In this Case Did Not Support a Finding of Intoxication with a Combination of Alcohol and Insulin.

In the present case, there was neither evidence of *recent* ingestion of drugs, as in *Meanor* and *Falcone,* nor evidence that the level of the drug in the defendant's system could cause intoxication, as in *Falcone.* The only evidence of the possible effects of insulin came from Mr. Clarkston's expert, Dr. Boyer. Dr. Boyer testified that Mr. Clarkston had previously had problems with hypoglycemia. He further testified that one type of hypoglycemic reaction, called neuroglycopenia, may mimic the symptoms of intoxication and that it "is recommended that a Type I diabetic wear identification because it can be misinterpreted as intoxication, the reaction they have." Dr. Boyer stated that this reaction could be caused by *taking too much insulin,* or by not eating enough food or being too active in light of the food taken. He testified that any of the latter three conditions could increase the affect of alcohol. He also testified that in the absence of one of these three reactions, the mere fact that a person was taking insulin could not make them intoxicated, and would not, in itself, increase the affects of alcohol on them.[5]

---

5. Mr. Clarkston's counsel misinterpreted his expert to say that a neuroglycopenic reaction is caused by insufficient insulin. He thus argued that Mr. Clarkston must not have had any of the insulin in his system by the time of the accident, or he would not be suffering from an insulin depletion reaction. A careful review of the expert's testimony reveals that he in fact testified that either too little or too much insulin can cause a reaction in a diabetic, but that the condition which mimics intoxication is caused by *too much* insulin, or too much exercise or too little

food, all of which lead to low blood sugar. For the reasons noted in the rest of this opinion, however, the evidence still fails to show that Mr. Clarkston had too much insulin in his system, for the only evidence was that he had not taken insulin for the fourteen and one-half hours preceding the accident. If he was having a neuroglycopenic reaction at the time of the accident (rather than just suffering from alcohol intoxication), it therefore had to have been due to too much exercise or inadequate food. Neither of these latter causes, of course, would support

Given this testimony, and in light of the principles set out in *Friend, Falcone,* and similar cases, in order to prove intoxication by drugs and alcohol, the State had to show that Mr. Clarkston had drunk alcohol and taken insulin, that they were in his system while he was driving, and that they had combined to make him intoxicated. The only evidence on Mr. Clarkston's use of insulin came from two witnesses. Dr. Boyer testified that he had prescribed insulin to be taken by Mr. Clarkston in the morning and the evening. One of the police officers testified that Mr. Clarkston told him that he had taken insulin at 7:00 a.m. that morning. The incident for which Mr. Clarkston was arrested occurred at approximately 9:30 p.m., some fourteen and one-half hours later.[6]

Thus, in order to prove intoxication with a combination of alcohol and insulin, the State had to show that the insulin Mr. Clarkston had taken at 7:00 a.m. that morning was still sufficiently in his system and combined with the alcohol to cause his intoxication. There was no such testimony. There simply was no evidence as to how much, if any, insulin would have remained in his system by 9:30 p.m. that evening. Even if we could assume some insulin remained, there is no evidence that it was "too much insulin," as might result in the type of reaction at issue here. Indeed, common sense indicates that even if Mr. Clarkston had taken too much insulin at 7 a.m. that morning, he could not then eat lunch, drive to work, work for some hours, all without any reaction, but then fourteen and one-half hours later have a reaction to the morning dose of insulin. At a minimum, expert testimony was needed to support such a hypothesis.

For these reasons, we find that here, as in *Friend,* there simply was no evidence to support the submission that Mr. Clarkston's in-

toxication was related to the particular drug alleged, insulin, and no evidence to support the argument that insulin combined with alcohol to cause Mr. Clarkston's intoxication.

■ We will only reverse for an instructional error if we find both error in submitting the instruction and that the error prejudiced the defendant. Rule 28.02. When we determine whether prejudicial error occurred in submitting an instruction, "we are entitled to consider the facts and all instructions together." *State v. Howard,* 896 S.W.2d 471, 483 (Mo.App.1995) (citations omitted). Here, there is no way to determine whether the jury returned a verdict of guilty because it believed the defendant was intoxicated with alcohol, or because it believed the defendant was intoxicated with a combination of alcohol and insulin. We do know, however, that the prosecutor argued in his opening that "at the very least, [Mr. Clarkston] was under the influence of alcohol and a reaction with insulin. [It is the] State's contention that there was no insulin reaction, but at the very least the alcohol combined with his insulin reaction to make him intoxicated, which is enough for you to find him guilty," and repeated this argument in both closing and rebuttal. Because the jury may have based its verdict on this improper ground, we reverse and remand for a new trial.[7]

## C. Principles Governing Submission on Remand.

The reason why the State submitted intoxication by a combination of alcohol and drugs is evident from the record. Mr. Clarkston was arguing that he was not intoxicated, but rather was having a hypoglycemic reaction, or that this reaction caused him to become intoxicated after drinking only a few beers,

submission of intoxication by a combination of alcohol and drugs.

6. At oral argument, counsel indicated that the accident occurred at about 4 p.m. Nothing in the appellate record supports this time of the accident, however. The police report is not in the record on appeal, and the witnesses testified that the accident occurred between 9:30 p.m. and 10:00 p.m. The briefs filed on appeal also say the accident occurred at this time.

7. Mr. Clarkston argues that a mistrial was required because the prosecutor's argument misstated his expert's testimony about the cause of insulin intoxication. In fact, the prosecutor's argument was based on a correct understanding of what the expert had testified to; it simply was not supported by sufficient additional facts regarding Mr. Clarkston's use of insulin.

and that he could not, thus, be convicted of driving while intoxicated.

▮▮▮▮▮ To counter this argument, the State argued that if the alcohol and drugs combined to cause the intoxication, Mr. Clarkston would still be guilty. While, as noted earlier, this is true, the facts simply did not support this submission. They did support a submission on the theory of intoxication with alcohol, however, and the State need not have feared that the defendant might be found not guilty based on the claim that his diabetic condition contributed to his intoxication. What is wrong with that defense is that, for the reasons already discussed, it simply is no defense to a charge of driving while intoxicated that the intoxication was caused by prescription drugs. Similarly, it is no defense to a charge of alcohol intoxication that the prescription drugs made the defendant more susceptible to alcohol. A person has an obligation not to drive while intoxicated, and if a person's physical condition makes him become intoxicated with alcohol more easily than most, he must avoid driving after drinking. However, what a person whose physical condition made him more susceptible to alcohol would be guilty of is driving while intoxicated with alcohol, not with a combination of drugs and alcohol, unless it is shown that drugs actually contributed to the intoxication. Here, there was no such proof.

## IV. MOTION TO SUPPRESS DEFENDANT'S STATEMENTS

Mr Clarkston also claims that the court erred by overruling his motion to suppress statements he made to the police officers admitting consumption of alcohol because they were involuntary, due to his hypoglycemic reaction, and because the State failed to prove the corpus delicti of DWI independent of these statements. The State counters that the evidence established that the statements were made voluntarily and that the corpus delicti of DWI was established by independent evidence.

▮▮▮▮ Our review of the court's ruling denying a motion to suppress is "limited to whether the court's decision is supported by substantial evidence, and deference is given

to the trial court's superior opportunity to determine credibility of witnesses." *State v. Feltrop,* 803 S.W.2d 1, 12 (Mo. banc 1991) (citation omitted). " 'The test for 'voluntariness' is whether under the totality of the circumstances defendant was deprived of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed.' " *Feltrop,* 803 S.W.2d at 12, quoting, *State v. Lytle,* 715 S.W.2d 910, 915 (Mo. banc 1986). "[T]he state is not required to negate every possible fact which could raise an issue as to the voluntariness of a confession." *State v. Bailey,* 714 S.W.2d 590, 594 (Mo.App.1986).

In a case similar to the one before us, *State v. Harris,* 774 S.W.2d 487, 492 (Mo. App.1989), the defendant claimed that at the time he spoke with the police he was confused and disoriented, had taken sleeping pills, and had not slept or eaten in a week, and that, therefore, his confession was involuntary. The police officer testified that the defendant had been calm and did not appear confused by his *Miranda* rights and that he had given a lucid and detailed account of the events corresponding to the statements. The court held that mental illness, unless combined with police coercion, does not render a confession involuntary, *per se,* but rather is only a factor for the court to consider. Another factor considered by the court was the defendant's waiver of *Miranda* rights, as indicative of the voluntariness of the statements. In spite of the defendant's arguments that his condition, induced by sleeping pills and a lack of sleep, precluded these statements from being voluntary, the court concluded that the defendant's condition at the time he made the statements was relative to the weight to be given to the statements, not their admissibility and that, therefore, the trial court had not erred in admitting them. *Id.*

▮▮▮▮ In the present case, Mr. Clarkston is making a similar claim to the one made by the defendant in *Harris.* Mr. Clarkston is arguing a hypoglycemic reaction rendered his statements involuntary, where-

as the *Harris* defendant had argued sleeping pills and a lack of sleep had rendered his statements involuntary. In the hearing on this motion to suppress, Mr. Clarkston testified that he believed he was having a "neuroglycopenic reaction" at the time of this incident, and that he did not remember making these statements to the police. The police officers testified that Mr. Clarkston appeared to understand them, responded appropriately, and indicated that he understood his *Miranda* rights before he waived them. The State contested Mr. Clarkston's claim that he was having a neuroglycopenic reaction, arguing he was drunk.

Although a condition such as Mr. Clarkston claims he was having may be a factor in the court's determination, it, similar to mental illness, does not *per se* render the statements involuntary. Mr. Clarkston's waiver of his rights is a factor indicating the voluntariness of these statements, as was the officer's testimony concerning Mr. Clarkston's understanding and responsiveness. Moreover, there were alternative explanations for his conduct, in particular, the fact that he had been drinking. A defendant cannot automatically exclude statements simply by claiming that he made them while suffering from a reaction to a medication. It is up to the court to assess the evidence and make credibility determinations in determining voluntariness. Mr. Clarkston does not allege that the officers used any form of coercion in obtaining these statements. The trial court judge was free to believe or disbelieve any of these witnesses and was in a better position than we are to judge their credibility. There is substantial evidence from which the trial court may have found that given the "totality of the circumstances," Mr. Clarkston was not "deprived of a free choice to admit, to deny, or to refuse to answer, [nor was] physical or psychological coercion" used in obtaining these statements. Thus, the court's determination that these statements were voluntarily made was not error.

The second issue raised by Mr. Clarkston's fourth Point Relied On is whether these statements were, nonetheless, erroneously admitted because the State failed to prove the corpus delicti of DWI with independent evidence.

Mr. Clarkston's extrajudicial statements should not have been admitted " 'unless there [was] independent proof, either circumstantial or direct, of the essential elements of the corpus delicti...." *State v. Stimmel*, 800 S.W.2d 156, 158 (Mo.App.1990), quoting, *State v. Summers*, 362 S.W.2d 537, 542 (Mo.1962). If the State has presented "[i]ndependent evidence of circumstances which 'correspond and interrelate' with the circumstances described in the statement or confession [this is] sufficient to prove [the] corpus delicti." *Stimmel*, 800 S.W.2d at 158, quoting, *State v. Litterell*, 800 S.W.2d 7, 10 (Mo.App.1990). "The corpus delicti of driving while intoxicated ... consists of evidence that someone operated a motor vehicle while intoxicated." *Stimmel*, 800 S.W.2d at 158, citing, *Litterell*, 800 S.W.2d at 10.

Mr. Clarkston does not claim that the State did not have evidence that he was operating a motor vehicle. Thus, our inquiry is limited to whether the State presented evidence, independent of Mr. Clarkston's statements, which indicated that Mr. Clarkston was intoxicated. The evidence indicating that Mr. Clarkston was intoxicated included: 1) testimony of his failure of the horizontal gaze nystagmus test; 2) testimony that "a strong smell of alcoholic beverage" was coming from Mr. Clarkston at the time of his arrest; 3) testimony that Mr. Clarkston's eyes were watery, bloodshot, and glassy; 4) testimony indicating that Mr. Clarkston was stumbling and wobbling; and 5) the fact that Mr. Clarkston rear-ended a Ford van which was stopped at an intersection.[8] All of this independent evidence "corresponds and interrelates" with his statement that he had consumed beer. The evidence indicated that he was intoxicated. Thus, the corpus delicti of DWI was proven

---

8. Mr. Clarkston argues that another possible explanation exists for most of the above evidence (excepting the strong smell of alcoholic beverage)—that he was suffering from a hypoglycemic reaction which could "mimic" the signs of intox- ication. This, however, does not go to the admissibility of his extrajudicial statements. The evidence still established the corpus delicti of the crime; he merely established an alternative explanation for some of these signs of intoxication.

with sufficient independent evidence, and the admission of Mr. Clarkston's statements was not error.

## V. HORIZONTAL GAZE NYSTAGMUS TEST

In his final Point Relied On, Mr. Clarkston claims that the court erred in overruling his motion to suppress evidence of his failure of the horizontal gaze nystagmus test as evidence of intoxication, because this test is not a reliable measure of an illegal level of intoxication. The State counters that this issue has been decided by this Court in *State v. Hill,* 865 S.W.2d 702 (Mo.App.1993), overruled on other grounds by *State v. Carson,* 941 S.W.2d 518, 519 (Mo. banc 1997). The State also notes that our holding in *Hill* was followed by the Southern District in *State v. Myers,* 940 S.W.2d 64 (Mo.App.1997). Appellant does not cite us to any contradictory law, but rather asks us to "reexamine and no longer follow [our] holding" in *Hill.* We decline to do so here.

For the reasons set out above, the case is reversed and remanded for a new trial in accordance with this opinion.

All concur.