STATE of Missouri, Respondent,

v.

Richard HILL, Appellant,

City of Kansas City, Missouri,
Amicus Curiae.

No. WD 46600.

Missouri Court of Appeals,
Western District.

Sept. 7, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 2, 1993.

Application to Transfer Denied
Dec. 21, 1993.

David S. Durbin, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

Lucille Rizetta Myles, Kansas City, for amicus curiae.

Before SPINDEN, P.J., and FENNER and HANNA, JJ.

FENNER, Judge.

Appellant, Richard Alan Hill, appeals his convictions after trial by jury of driving while intoxicated and driving while revoked.

**I.**

In his first point on appeal, appellant argues that the trial court erred by allowing testimony regarding the horizontal gaze nystagmus (HGN) test. Appellant argues specifically that the HGN test does not meet the *Frye* test for reliability. Appellant further argues that the HGN test was improperly used as a method of determining blood alcohol concentration.

**A. *HGN***

The court in *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923), held that evidence deriving from a scientific theory or principle is admissible only if that theory or principle has achieved general acceptance in the relevant scientific community. Missouri has adopted the *Frye* standard for determining the admissibility of new scientific techniques. *Alsbach v. Bader*, 700 S.W.2d 823, 828 (Mo. banc 1985).[1]

In the case at bar, the State presented expert testimony in regard to the HGN test from Dr. Marcelline Burns. Dr. Burns is a Ph.D. in psychology who is Director of the Southern California Research Institute. The Southern California Research Institute is engaged in research having to do with alcohol and drug effects on performance.[2]

---

1. The United States Supreme Court has recently held that the Federal Rules of Evidence, not *Frye*, provide the standard for admitting expert scientific testimony in a federal trial. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Missouri, nonetheless, still follows the *Frye* standard.

2. Appellant cites to certain publications which were not in evidence before the trial court in an effort to discredit the HGN test. Because these publications were not in evidence, they will not be considered on appeal.

Dr. Burns has studied the effects of alcohol on human behavior. The record reflects that Dr. Burns and her associates have conducted two large-scale studies on behalf of the National Highway and Traffic Safety Administration (NHTSA) to determine the most accurate field sobriety tests available to police officers and to standardize the procedures for these tests. Dr. Burns testified that the studies determined the three best field sobriety tests to be HGN, walk and turn, and one leg stand. Dr. Burns has continued to do research and training across the country on the use of the HGN test. She has also testified extensively on the use of the HGN test.

Nystagmus is an involuntary jerking of the eyes. Under the HGN test, an individual's eye movements are tested as a means of determining whether they are under the influence of alcohol. A suspect is required to follow an object such as a finger or pen with his eyes as the object is moved laterally along a horizontal plane to the periphery of the suspect's vision. Dr. Burns testified that there are three separate indicators that an officer looks for under the HGN test. First, an officer observes how smoothly a suspect follows the object as it is moved to the periphery of the suspect's vision. Jerking of the eyes rather than the ability to follow the object smoothly indicates the influence of alcohol. Second, an officer observes whether or not a distinctive jerking occurs in the eyes at the maximum point of deviation when the eye moves to the far periphery of vision. Distinctive jerking is indicative of the influence of alcohol. Third, an officer observes the angle at which nystagmus occurs. Nystagmus occurring at or before the eye is looking at a 45–degree angle is indicative of the influence of alcohol.

A standard scoring system gives one point for eye movement indicative of alcohol influence for each of the three tests for each eye. The highest possible score is six points. A score of four or more points is an indication that a suspect is intoxicated.

Dr. Burns testified that at least eight hours of training on the use of the HGN test is recommended. She further testified that law enforcement in all 50 states use the HGN test and that it is generally accepted in the behavioral science community as a reliable basis to determine whether or not an individual suspect is intoxicated. Dr. Burns was aware of no scientific research inconsistent with her research and results.

▪ The State established that the HGN test has achieved general acceptance within the behavioral science community. We find that when properly administered by adequately trained personnel, the HGN test is admissible as evidence of intoxication.

▪ As established herein, adequate training consists of a minimum of eight hours of police training on how to administer and interpret the HGN test. Proper administration of the HGN test requires (1) that the test be conducted by requiring a suspect to follow an object such as a finger, pencil or pen with his eyes as the object is moved laterally along a horizontal plane to the periphery of the suspect's vision, and (2) that the indicators be interpreted and scored, one eye at a time, as follows: (a) the person administering the test is to observe how smoothly a suspect follows the object as it is moved to the periphery of the suspect's vision. Jerking of the eyes rather than the ability to follow the object smoothly indicates the influence of alcohol; (b) the person administering the test is to observe whether or not a distinctive jerking occurs in the eyes at the maximum point of deviation when the eye moves to the far periphery of vision. Distinctive jerking is indicative of the influence of alcohol; and (c) the person administering the test is to observe the angle at which nystagmus occurs. Nystagmus occurring at or before the eye is looking at a 45–degree angle is indicative of the influence of alcohol.

One point is scored for eye movement indicative of alcohol influence for each of the three tests for each eye. The highest possible score is six points, with a score of four or more points constituting substantial evidence that a suspect is intoxicated.

### B. *LEVEL OF BLOOD ALCOHOL CONTENT*

As a subpoint to his first point, appellant argues that the State offered evidence of the

HGN test not only to determine whether he was intoxicated, but also to determine a specific blood alcohol concentration.

■ As best as we can determine, appellant's complaint here is that the officer who administered the HGN test, Officer Lively, testified that when a suspect has scored six points on an HGN test that he had administered, the suspect always registers over .10 on a breathalyzer test. Since there was no objection to this testimony at trial and it was not raised in appellant's motion for new trial, it is only subject to review for plain error. *State v. Ervin*, 835 S.W.2d 905, 921 (Mo. banc 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); Rule 29.11(d). Relief under the plain error rule is granted only when the alleged error so substantially affects the rights of the accused that a manifest injustice inexorably results if left uncorrected. *State v. Hadley*, 815 S.W.2d 422, 423 (Mo. banc 1991).

■ Officer Lively did not render an opinion as to a specific blood alcohol content. In other words, the officer did not state that appellant's blood alcohol content was .16 or .18 or any other specific amount. The officer merely stated that his experience showed that persons who performed as appellant on the HGN test registered above .10 on the breathalyzer. This is not the same as testifying that an individual has a particular blood alcohol content.

Furthermore, since appellant refused the breathalyzer test, the only information before the jury as to the significance of a particular breathalyzer reading was that .10 was the measure of intoxication used by Dr. Burns in the tests with which she was involved. In other words, Dr. Burns used a reading of .10 on a breathalyzer test to define intoxication for purpose of her work. Officer Lively's

testimony in this regard served to establish a point of reference to Dr. Burns' definition of intoxication. Officer Lively's testimony clearly did not amount to plain error.

Appellant's first point is denied.

## II.

In his second point, appellant argues that he was denied effective assistance of counsel because trial counsel failed to offer expert testimony to refute the testimony of Dr. Burns. Appellant further argues that trial counsel failed to cross-examine Dr. Burns effectively.

■ Rule 29.15 is the exclusive remedy for a claim of ineffective assistance of counsel upon conviction after trial. *State v. Wheat*, 775 S.W.2d 155, 157 (Mo. banc 1989), *cert. denied*, 493 U.S. 1030, 110 S.Ct. 744, 107 L.Ed.2d 762 (1990). Failure to file a timely motion under Rule 29.15 constitutes a complete waiver to proceed under the Rule. *Id.*

Appellant failed to file a motion under Rule 29.15 and is precluded from challenging the effectiveness of trial counsel on direct appeal.

Appellant's second point is denied.

## III. & VIII.

In his third and eighth points, appellant argues that the trial court lacked jurisdiction to sentence appellant as a prior DWI offender because the information charged him as a persistent DWI offender.

Appellant was charged by information with driving while intoxicated as a persistent offender. The information charged that appellant had been convicted of driving while intoxicated twice in the ten years preceding the current offense. The offense was charged as a class D felony.[3] After trial by jury on

---

3. The statute in effect at the time, section 577.023.3, RSMo 1986, provided that any person who plead or was found guilty of driving while intoxicated who was alleged and found to be a persistent offender was guilty of a class D felony. A persistent offender was defined as a person who had plead guilty to or been found guilty of two or more intoxication-related traffic offenses committed at different times within ten years of a previous intoxication-related traffic offense conviction. § 577.023.1(2), RSMo 1986. Effective

July 1, 1992, section 577.023, RSMo 1986, was amended; however, the language relevant here was not modified. § 577.023, RSMo Supp.1992.

A prior offender is defined as an individual "who has pleaded guilty to or has been found guilty of an intoxication-related traffic offense within five years of a previous intoxication-related traffic offense conviction." § 577.023.1(3), RSMo 1986. This statutory provision was unchanged in the 1992 amendments.

April 9, 1992, appellant was found guilty as charged. Since appellant was charged as a persistent offender, punishment was not submitted to the jury.[4]

■ After appellant was convicted, but before he was sentenced, the Missouri Supreme Court handed down *State v. Stewart,* 832 S.W.2d 911 (Mo. banc 1992). *Stewart* was handed down on June 30, 1992, and appellant was sentenced by the trial court as a prior offender on July 13, 1992.[5] *Stewart* held that in order to prove persistent offender status, the State had to prove that there were two offenses committed within ten years of a prior offense, not that two offenses were committed within ten years of the current offense. *Id.* at 913.

Appellant argues that since he was charged and convicted as a persistent offender the court did not have "jurisdiction" to sentence him as a prior offender.[6] Appellant's argument is inconsistent with *Stewart.*

In *Stewart,* the defendant was charged with DWI as a persistent offender. *Stewart,* 832 S.W.2d at 912. The charge alleged two previous DWI convictions within ten years of the current charge. *Id.* at 912. The defendant was found guilty but was ultimately sentenced as a prior offender. *Id.* at 912. The defendant's DWI conviction and sentence as a prior offender were affirmed. *Id.* at 914. The circumstances of the case at bar are the same as in *Stewart.*

■ Furthermore, provisions for repeat offender sentencing do not create an additional substantive crime. *State v. Street,* 735 S.W.2d 371, 373 (Mo.App.1987). When a defendant is incorrectly sentenced on the

basis of repeat offender status, the remedy is to remand to allow for any necessary amendment of the information and for the defendant to be resentenced. *Id.* at 374.

In the case at bar, remand is not necessary because appellant was properly sentenced, as supported by the charge and the evidence, as a prior DWI offender, rather than a persistent DWI offender.

Appellant's third and eighth points are denied.

## IV. & VI.

In his fourth and sixth points, appellant argues that the trial court lacked jurisdiction to sentence him for driving while intoxicated and driving while revoked because the State failed to submit the proper mental state in the information against him.

■ When the sufficiency of an information or indictment is raised for the first time after verdict, as was done in the case at bar, the charge "will be deemed insufficient only if it is so defective that (1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced. In either event, a defendant will not be entitled to relief based on a post-verdict claim that the information or indictment is insufficient unless the defendant demonstrates actual prejudice." *State v. Parkhurst,* 845 S.W.2d 31, 35 (Mo. banc 1992).[7]

Appellant has failed to argue or show any actual prejudice.

---

4. Punishment is not submitted to the jury for either a persistent or prior offender. § 557.023.-12, RSMo 1986. This statutory section was unchanged in section 577.023.13, RSMo Supp. 1992.

5. The court in *Stewart* stated that its decision had retrospective application to all pending cases not finally adjudicated as to June 30, 1992, the date of the court's opinion. *Stewart,* 832 S.W.2d at 914.

6. The evidence established that appellant was a prior offender. The information likewise alleged convictions sufficient to charge appellant as a prior offender. Appellant does not argue that

the State failed to establish that he was a prior offender.

7. Appellant relies on the case of *State v. Merritt,* 833 S.W.2d 4 (Mo.App.1992) for his argument that the omission of the mental state is jurisdictional. In *Merritt,* the Southern District relied on the rule of law expressed in *State v. Gilmore,* 650 S.W.2d 627 (Mo. banc 1983), *cert. denied,* 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986). However, the Missouri Supreme Court has expressly reversed the holding in *Gilmore* in *State v. Parkhurst,* 845 S.W.2d at 34. *Merritt* is no longer valid authority.

Appellant's fourth and sixth points are denied.

## V. & VII.

Finally, in his fifth and seventh points, appellant argues that the trial court erred in submitting instructions number 6 and 8. Appellant argues that instruction number 6, the verdict director for driving while intoxicated, not only failed to present the jury with the mental state alleged in the information, but further did not require the jury to find any mental state. In regard to instruction number 8, appellant argues that the instruction did not submit the mental state alleged in the information. Having neither objected to the instructions at trial nor raised these issues in his motion for new trial, appellant seeks plain error review.

■ An instructional error is seldom plain error. A defendant "must go beyond a demonstration of mere prejudice and establish such a misdirection of the jury as would cause manifest injustice." *State v. Root*, 820 S.W.2d 682, 688 (Mo.App.1991) (quoting *State v. Walton*, 703 S.W.2d 540, 542 (Mo.App. 1985)). In *Walton*, the court held that failure to include the required mental state of "knowingly" in a verdict director for tampering with an automobile in the first degree was not plain error. *State v. Walton*, 703 S.W.2d 540, 542 (Mo.App.1985).

■ Additionally, instructions number 6 and 8 were the approved MAI–CR instructions for driving while intoxicated and driving while revoked. If an applicable criminal instruction is provided by MAI–CR, it is mandatory that the instruction be given as written. *State v. Snyder*, 748 S.W.2d 781, 785 (Mo.App.1988). An instruction which follows the format of an approved criminal instruction will not be deemed error. *State v. Hawkins*, 703 S.W.2d 67, 70 (Mo.App.1985).

Appellant's fifth and seventh points are denied.

**Judgment affirmed.**

All concur.