**Daniel R. MAPES, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. WD 73303.**

Missouri Court of Appeals, Western District.

Nov. 8, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 31, 2012.

Application for Transfer Denied April 3, 2012.

---

Chris Koster, Attorney General, Jonathan H. Hale and Samuel E. Buffaloe, Special Assistant Attorneys General, Jefferson City, MO, for Appellant.

Matthew D. Lowe, Jeffrey Dull, and Jason Heany, Clinton, MO, for Respondent.

Before Division II: MARK D. PFEIFFER, Presiding Judge, and VICTOR C. HOWARD and JAMES EDWARD WELSH, Judges.

MARK D. PFEIFFER, Presiding Judge.

The Director of Revenue of the State of Missouri ("Director") appeals from the judgment of the Circuit Court of Henry County ("trial court"), ordering the Director to remove the administrative revocation from Daniel R. Mapes's ("Mapes") driving record and to reinstate Mapes's driver's license. We affirm.

### Factual and Procedural History

Following the Director's administrative revocation of Mapes's driving privilege for his refusal to submit to a chemical test, Mapes petitioned the trial court, pursuant to section 577.041.4,[1] for review of whether the arresting officer had probable cause to believe Mapes was driving a motor vehicle in an intoxicated condition. The case was submitted on a certified copy of the records of the Department of Revenue, which included Mapes's Missouri Driver Record, the Director's notice of revocation and temporary driving permit, the Alcohol Influence Report, the arresting officer's Alcohol Influence Report Narrative, and a copy of the Missouri State Highway Patrol uniform citation issued to Mapes for driving while intoxicated ("DWI").

Though the parties disagreed about the quality of the evidence as it related to the issue of probable cause, the facts set forth in the certified documents produced by the Director are not disputed. They are as follows:

At approximately 1:00 a.m. on July 4, 2010, Sergeant W.P. Bremer ("the Offi-

---

1. Unless otherwise indicated, all statutory references are to RSMo Cum.Supp.2009.

cer") met a vehicle exceeding the posted speed limit (70 miles per hour in a 60 miles-per-hour zone). The Officer turned around, overtook the vehicle, and activated his emergency lights. After about ten seconds, the driver pulled the vehicle to the shoulder. As the Officer approached the driver's door, he noticed that the driver's eyes were bloodshot. When requested by the Officer, the driver produced his driver's license and proof of insurance. The driver was identified as Mapes. The Officer asked Mapes to exit the vehicle and sit in the patrol car. The Officer observed that as Mapes walked to the patrol car, his torso was rigid and stiff. While seated in the patrol car, the Officer detected a "moderate to strong odor of intoxicants on or about" Mapes. When the Officer asked Mapes how much alcohol he had consumed during the day, Mapes replied, "Not much at all." When the Officer asked Mapes to clarify what he meant, Mapes responded that he had consumed one beer early in the afternoon of July 3, 2010. The Officer asked why Mapes's eyes were bloodshot, and Mapes responded that he was having family issues and had been crying.

The Officer then had Mapes perform several field sobriety tests. Mapes successfully completed the One–Leg–Stand Test and the Alphabet Test. He did not touch heel to toe on steps 3 and 5 down and step 3 on the return during the Walk–and–Turn Test. During the Horizontal Gaze Nystagmus ("HGN") Test, Mapes had no smooth pursuit in either eye, had distinct nystagmus at maximum deviation in both eyes, and had an onset of nystagmus before forty-five degrees in the right eye only. The Preliminary Breath Test was positive for alcohol: .08%, low breath sample.[2] At 1:20 a.m., the Officer arrested Mapes for DWI and transported Mapes to the Henry County jail, where the Implied Consent Law[3] was explained to him. Mapes refused to submit to a chemical test of his breath to determine the alcohol content of his blood. He was advised of his *Miranda*[4] rights. The Officer issued Mapes citations for speeding and DWI. Thereafter, the Director revoked Mapes's driving privileges pursuant to section 577.041, and Mapes petitioned for a trial *de novo*.

In its judgment, the trial court found that the Director failed to establish that the Officer had probable cause to believe that Mapes was driving while intoxicated at the time of the arrest. The trial court noted that Mapes did not have any problems with his balance, walking, or speech at any point prior to the arrest; that Mapes was able to successfully complete the One–Leg–Stand Test; and that Mapes

---

**2.** While we recognize that the results of a pre-arrest test by a portable breath-testing machine are admissible as evidence of probable cause to arrest for driving while intoxicated, § 577.021.3, we also note that this was a low breath sample at the minimum (i.e., .08%) percentage of alcohol concentration necessary to pursue a charge for driving with excessive blood alcohol content, § 577.012, and the remaining evidence in this case reflected that Mapes did well on the field sobriety tests—thereby providing the trial court with substantial evidence to support its ruling.

**3.** "The [I]mplied [C]onsent [L]aw, section 577.020, outlines the circumstances in which a motor vehicle operator gives implied consent for chemical testing for blood alcohol or drug content (BAC)." *Ross v. Dir. of Revenue*, 311 S.W.3d 732, 734 (Mo. banc 2010). Relevant to the issue in this case, it provides for implied consent in any circumstance in which the motor vehicle operator is "arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition[.]" § 577.020.1(1).

**4.** *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

was able to recite the alphabet when requested to do so. Although the record indicated that Mapes failed to touch heel to toe on the Walk–and–Turn Test, the trial court declined to give weight to that evidence because the record did not indicate what the Officer instructed Mapes to do during the test and whether Mapes completed the test in accordance with the instructions. Likewise, the trial court acknowledged the results of the HGN Test but gave no weight to them because the record failed to establish the procedures that were used during the administration and scoring of the test or to suggest how the trial court should interpret the results.

In its judgment, the trial court ordered the Director to remove the administrative suspension (revocation) from Mapes's driving record and to reinstate Mapes's driver's license.

The Director timely appeals.

## Standard of Review

 Judicial review of an administrative revocation of a person's driver's license pursuant to section 302.505 is governed by section 302.535. At the trial *de novo* in the trial court, the State (represented by the Director) has the burden of proof to adduce evidence. § 302.535.1. "The [D]irector's burden of proof has two components—the burden of production and the burden of persuasion." *White v. Dir. of Revenue*, 321 S.W.3d 298, 304 (Mo. banc 2010) (footnote omitted). To satisfy the burden of production, the Director must introduce enough evidence on an issue to have the issue decided by the trial court, rather than decided against the Director in peremptory ruling. *Id.* at 304–05. To satisfy the burden of persuasion, the Director must convince the trial court

to view the facts in a way that favors the Director. *Id.* at 305. "When the burden of proof is placed on a party for a claim that is denied, the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted[5] evidence." *Id.* "If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party." *Id.* "[T]he party not having the burden of proof on an issue need not offer any evidence concerning it." *Id.* (internal quotation omitted).

The standard of review to be applied to an appeal from a trial court's judgment in a driver's license suspension and revocation case under section 302.535 is that of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *White*, 321 S.W.3d at 307–08. We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* (citing *Murphy*, 536 S.W.2d at 32). "In determining whether there is substantial evidence supporting the judgment of the trial court[,] we defer to the ability of the trial court to ascertain the facts. The trial court is accorded wide discretion even if there is evidence in the record which would support a different result." *Engelage v. Dir. of Revenue*, 197 S.W.3d 197, 198 (Mo.App. W.D.2006) (internal quotation omitted).

## Statutory Background

 At a trial *de novo* following administrative revocation of a driver's license pursuant to the Implied Consent Law, the trial court is to determine only:

---

5. The Missouri Supreme Court in *White* clarified that "the concept of 'uncontroverted evidence' to require the production of contrary evidence to contest an issue or evidence is improper, and the concept of 'contested evidence' is the appropriate concept as it correctly denotes disputing or litigating a claim without requiring an affirmative offer of evidence contradicting the [D]irector's evidence." 321 S.W.3d at 306–07 n. 7.

(1) Whether or not the person was arrested or stopped;

(2) Whether or not the officer had [r]easonable grounds [6] to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; [and]

. . . .

(3) Whether or not the person refused to submit to the test.[7]

§ 577.041.4. "The Director has the burden of proving all three elements by a preponderance of the evidence." *Bruce v. State, Dep't of Revenue,* 323 S.W.3d 116, 119 (Mo.App. W.D.2010). "If the court determines any issue not to be in the affirmative, the court shall order the director to reinstate the license or permit to drive." § 577.041.5.

## Analysis

The Director's sole point on appeal challenges the trial court's reinstatement of Mapes's driving privileges on the grounds: (i) that there was no basis in the evidence for the trial court to disregard the HGN results, and (ii) that the evidence established that the Officer had probable cause to arrest Mapes for DWI.

■■■ The trial court concluded that the Director failed to establish that the Officer had probable cause to believe that Mapes was driving while intoxicated at the time of the arrest. "The probable cause required for the suspension or revocation of a driver's license is the level of probable cause necessary to arrest a driver for an alcohol-related violation," and exists when

an arresting officer: (i) "observes unusual or illegal operation of a motor vehicle"; and (ii) "observes indicia of intoxication on coming into contact with the motorist." *White,* 321 S.W.3d at 309 (internal quotations omitted). "The level of proof necessary to show probable cause under section 302.505 is substantially less than that required to establish guilt beyond a reasonable doubt." *Id.* (internal quotation omitted). "Probable cause, for purposes of section 302.505, will exist when the surrounding facts and circumstances demonstrate to the senses of a reasonably prudent person that a particular offense has been or is being committed." *Id.* (internal quotation omitted). "The trial court must assess the facts by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer." *Id.* (internal quotation omitted).

■■■ In this case, the Officer's Alcohol Influence Report ("AIR") Narrative stated that the Officer observed Mapes's illegal operation of his motor vehicle: Mapes's vehicle was exceeding the posted speed limit, and he delayed ten seconds before pulling over to the shoulder after the Officer activated his emergency lights. The Officer's AIR Narrative also stated that the Officer observed indicia of intoxication after the stop: Mapes's eyes were bloodshot, the Officer detected a moderate to strong odor of intoxicants on or about Mapes while they were seated in the patrol car, Mapes admitted that he had consumed one beer earlier in the afternoon of the previous day, and his preliminary breath test registered positive for alcohol.[8]

---

**6.** " 'Reasonable grounds' is virtually synonymous with probable cause." *Hinnah v. Dir. of Revenue,* 77 S.W.3d 616, 620 (Mo. banc 2002) (internal quotation omitted).

**7.** In this case, there is no dispute that Mapes was arrested for DWI and that he refused to submit to a chemical test. Mapes only challenged the second element—whether the arresting officer had reasonable grounds to believe that Mapes was driving a motor vehicle while in an intoxicated condition.

**8.** *See Soest v. Dir. of Revenue,* 62 S.W.3d 619, 621 (Mo.App. E.D.2001) (stating that driver's admission to officer that she had "one beer, several hours earlier," which statement he

However, there was also evidence before the trial court that Mapes did not have any problems with his speech, balance, or walking at any point prior to the arrest. Mapes was able to complete the One–Leg–Stand Test without difficulty and was able to successfully recite the alphabet when requested by the Officer to do so. Only one box out of nine was checked on the Walk–and–Turn Test section of the AIR, with the AIR Narrative indicating that Mapes did not touch heel to toe on steps 3 and 5 down and step 3 on the return. However, as the trial court noted, there was no evidence in the record to suggest what instructions Mapes was given—whether the Officer told Mapes to touch heel to toe on any particular number of steps. Without such information, it was not unreasonable for the trial court to decline to give weight to the evidence that Mapes failed to touch his heel to his toe during the test.

The trial court also declined to give any weight to the results of the HGN test administered to Mapes because there was no evidence presented to establish either the procedure used during the administration of the test or how the results should be interpreted. In *State v. Hill,* 865 S.W.2d 702, 704 (Mo.App. W.D.1993), *overruled on other grounds by State v. Carson,* 941 S.W.2d 518, 523 (Mo. banc 1997), we held that "when properly administered by adequately trained personnel, the HGN test is admissible as evidence of intoxication." [9] *Hill* described the training and administration required:

[A]dequate training consists of a minimum of eight hours of police training on how to administer and interpret the HGN test. Proper administration of the HGN test requires (1) that the test be conducted by requiring a suspect to follow an object such as a finger, pencil or pen with his eyes as the object is moved laterally along a horizontal plane to the periphery of the suspect's vision, and (2) that the indicators be interpreted and scored, one eye at a time, as follows: (a) the person administering the test is to observe how smoothly a suspect follows the object as it is moved to the periphery of the suspect's vision. Jerking of the eyes rather than the ability to follow the object smoothly indicates the influence of alcohol; (b) the person administering the test is to observe whether or not a distinctive jerking occurs in the eyes at the maximum point of deviation when the eye moves to the far periphery of vision. Distinctive jerking is indicative of the influence of alcohol; and (c) the person administering the test is to observe the angle at which nystagmus occurs. Nystagmus occurring at or before the eye is looking at a 45–degree angle is indicative of the influence of alcohol.

One point is scored for eye movement indicative of alcohol influence for each of the three tests for each eye. The highest possible score is six points, with a score of four or more points constituting

did not have to take at face value, was a factor the officer could consider). Furthermore, the results of a pre-arrest test by a portable breath-testing machine are admissible as evidence of probable cause to arrest. § 577.021.3.

9. *Hill* addressed whether HGN test results were admissible to prove intoxication in the context of a criminal prosecution and did not address the admissibility of HGN test results to support an arresting officer's reasonable grounds to believe a person was driving while intoxicated in the context of an administrative revocation case; however, *Hill* did address what was required to properly administer the test, *Duffy v. Dir. of Revenue,* 966 S.W.2d 372, 378 (Mo.App. W.D.1998), and the training required of personnel administering the test.

substantial evidence that a suspect is intoxicated.

865 S.W.2d at 704. Lacking evidence of the officer's qualifications to conduct the HGN test and evidence of how he administered the test, we find it was reasonable for the trial court to question the reliability of the HGN test administered to Mapes and to conclude that the test result was not entitled to any weight. *See Duffy v. Dir. of Revenue,* 966 S.W.2d 372, 377–78 (Mo.App. W.D.1998) (finding HGN test result was inadmissible on the issue of probable cause in that the test was not properly administered).

When the case is submitted to the trial court on the basis of documentary evidence, and we have the same opportunity to review the evidence as did the trial court, " 'the law allocates the function of fact-finder to the [trial] court.' " *State v. Williams,* 334 S.W.3d 177, 181 n. 9 (Mo. App. W.D.2011) (quoting *MSEJ, LLC v. Transit Cas. Co.,* 280 S.W.3d 621, 623 (Mo. banc 2009)). Therefore, "[e]ven where the trial court's decision was based solely 'on the records,' we defer to the trial court as the finder of fact in determining whether there is substantial evidence to support the judgment and whether the judgment is against the weight of the evidence." *Williams,* 334 S.W.3d at 181 (internal quotation omitted). While the record might have supported a contrary result, it is not our role to reweigh the evidence. *Cf. Anderson v. City of Bessemer City,* 470 U.S. 564, 573–75, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (finding court of appeals improperly applied standard of appellate review set forth in Federal Rule of Civil Procedure 52(a) by weighing the evidence in the record *de novo;* reviewing court oversteps its bounds if it undertakes to duplicate role of lower court; if district court's factual findings, even when based only on documentary evidence, are plausible viewed in light of the entire record, the court of appeals may not reverse, even though it may have weighed the evidence differently; deference to the factual findings of the trier of fact is the rule, not the exception).

Accordingly, we conclude that substantial evidence supported the trial court's determination based on the submitted record that the Director did not meet her burden to establish that the Officer had reasonable grounds to believe that Mapes was driving a vehicle while in an intoxicated condition at the time of the arrest.

### Conclusion

We affirm the trial court's Judgment ordering reinstatement of Mapes's driver's license.

VICTOR C. HOWARD, Judge, and JAMES EDWARD WELSH, Judge, concur.