

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
)
    Plaintiff-Appellant, )
)
vs. ) No. SD38445
)
AMANDA M. MIRE, ) **Filed: January 13, 2025**
)
    Defendant-Respondent. )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

The Honorable John H. Bloodworth, Senior Judge

**<u>VACATED AND REMANDED</u>**

Amanda M. Mire ("Mire") was charged by Misdemeanor Information with driving while intoxicated as a prior offender. *See* section 577.010.[1] The State of Missouri brings this interlocutory appeal pursuant to section 547.200.1(3),[2] appealing the Circuit Court of Greene County, Missouri's order ("Order") granting Mire's Motion to Suppress Statements and her Motion in Limine and Motion to Suppress Physical Evidence ("Motion to Suppress Physical Evidence") on the basis that Mire "was

---

[1] All references to section 577.010 are to RSMo Supp. 2017, including all applicable changes effective August 28, 2017.

[2] All references to section 547.200 are to RSMo 2016.

involuntarily administered Versed prior to being advised of implied consent and her *Miranda*[3] warnings" and that due to the effects of Versed on Mire, she "did not knowingly and voluntarily consent to submit to the blood draw in this case" and "any statements made by [Mire], after she was administered Versed, are also suppressed from use in this case." The Order granting Mire's motions is vacated, and the cause is remanded for further proceedings consistent with this opinion.

### Factual Background and Procedural History

Mire was charged by Misdemeanor Information with one count of misdemeanor driving while intoxicated following events that occurred on September 2, 2022. Mire filed a Motion to Suppress Statements and a Motion to Suppress Physical Evidence in the case. In her Motion to Suppress Statements, Mire sought an order "suppressing from use in evidence all testimony and other evidence relating to or leading from any written, oral or recorded statement obtained from [Mire], whether incriminating or exculpatory" for the reasons she set forth in 15 specifically enumerated paragraphs. In her Motion to Suppress Physical Evidence, Mire sought an order

> suppressing from the use in evidence items taken from the person, property, premises and/or automobile of [Mire] or in which [Mire] was present or in which [Mire] had a right or interest, or which the [S]tate alleges [Mire] to have had possession, said search and seizure having taken place on or about September 2, 2022, and suppression of all evidence of said search and/or seizure and the fruits thereof[,]

for the reasons set forth in 12 specifically enumerated paragraphs. Neither motion specifically alleged that involuntary intoxication resulting from Versed rendered Mire unable to knowingly, intelligently, or voluntarily consent to a blood draw or waive her

---

[3] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

*Miranda* rights. On February 26, 2024, the trial court held a hearing on Mire's motions to suppress. As a preliminary matter, the State informed the trial court:

> [S]ince the burden of proof is on the State, I just want to make clear for the record that the State has spoken with the defense counsel and the nature of the motion to suppress, and being notified that it is challenging the PC for arrest, identification, and consent to the blood draw. So that is the primary evidence that the State will present today.

The trial court asked defense counsel if she agreed with that, to which defense counsel responded:

> Sort of. I rest on everything that I've stated in my motion. Those are the primary issues. We might add, also, the Miranda issue. So I do cite lots of things in my motion. Counsel is correct that we did discuss this ahead of time. And with the Miranda issue, I don't want to foreclose if something happens in the hearing that I've pled that isn't enumerated in those four things. But as I begin this hearing, those are the four things that I, primarily, see will be the issues at hand, Judge.

The State called three witnesses at the hearing. The defense called no witnesses. Mire did not testify. During that hearing, the following evidence was adduced:

On September 2, 2022, Springfield Police Officer Joseph Pyle ("Officer Pyle") responded to a 911 call for a motor vehicle crash involving an unresponsive person in a vehicle near the intersection of Republic Road and Harvard Avenue in Springfield, Missouri. Terrie Christian ("Ms. Christian") was at a red light on eastbound Republic Road when she observed a vehicle go through the intersection, drive onto the median and into a sign. Ms. Christian approached the vehicle and saw an unresponsive person in the driver's seat. Ms. Christian knocked on the vehicle's window, but was unable to get a response from the driver. Another person at the scene called 911.

When Officer Pyle responded to the scene, Mire was being placed on a stretcher and put into an ambulance. Mire was "acting frantic and slapping at" the emergency

medical technicians who were attempting to administer medical care. She was "staring up intently at the ceiling and not making eye contact with anybody" as they were trying to talk to her. Mire did not appear to be in a "normal state of mind." While Mire was in the ambulance, the ambulance crew held up a large, 200 milliliter bottle of vodka that was almost empty which was found in Mire's car. Officer Pyle asked Mire what she had taken; Mire said "a lot of vodka." Officer Pyle testified alcohol containers were found on Mire's person and in her purse. Officer Pyle followed the ambulance to the hospital.

At the hospital, Officer Pyle observed Mire continue to be combative to medical personnel trying to care for her. Mire was slapping at the workers and ripping at a C-collar around her neck. Officer Pyle testified:

> [Mire] was holding her hands up underneath her chin, grab—on top of the C-collar grabbing it and then tensing her whole body trying to pull it down. She also was pulling it side-to-side and then picking at the foam pieces of it. She even, at one point, grabbed the C-collar, lifted it up into her mouth, and started chewing and gnawing on it.

Officer Pyle observed the same demeanor and actions of Mire both in the ambulance and at the hospital. Officer Pyle was unable to perform field sobriety tests on Mire due to her erratic movements, however he concluded Mire was highly impaired based on his observations. Medical personnel involuntarily administered Versed to Mire to calm her down so that they could place an IV and provide medical care.

Officer Pyle did not talk to Mire until after medical care was completed and Mire had "calmed down." Officer Pyle testified, "I stayed off to the side so she could receive all medical care before doing anything because medical care always takes priority over our stuff. So I waited until she was able to get everything done by medical and then that they had left." Officer Pyle told Mire she was under arrest for driving while intoxicated,

4

informed her of the no-refusal warning and implied consent,[4] and read her *Miranda* rights to her. Mire indicated she understood those rights. Officer Pyle then asked Mire if she would provide a blood sample and Mire verbally consented to do so. Officer Pyle further testified he did not have a medical degree and that he has "very minimal" knowledge about Versed and could not testify to its effects. Officer Pyle's bodycam footage from the accident scene was admitted into evidence and played for the trial court up to the point when the trial judge stated,

> [State], I think we've seen enough. . . . Well, let the record reflect that the video shows her in a very, very distraught condition. And the attendant said that she was swinging at them and they asked her to stop swinging at them, so. . . . I think that's the point you wanted to get across, was it not?

The State responded, "Yes."

At the end of the testimony, the State and defense gave closing arguments. On the issues relevant in this case, defense counsel argued Mire's motions should be granted stating:

> Issue number two is, any statements that my client allegedly made once she was Mirandized by Officer Pyle and the very fact of her acquiescence to the blood test in this case, should be suppressed, because here's what we know. We know that my client was involuntary [sic] given Versed. We know that the officer said that the medical staff had to wait until it kicked in before they could even get an IV in her arm. So what we know

---

[4] "Implied consent" is outlined in section 577.020, RSMo 2016, including any applicable changes effective January 1, 2017. As relevant to this case, section 577.020 provides:

> 1. Any person who operates a vehicle upon the public highways of this state . . . shall be deemed to have given consent, subject to the provisions of sections 577.019 to 577.041, to a chemical test or tests of the person's breath, blood, saliva, or urine for the purpose of determining the alcohol or drug content of the person's blood pursuant to the following circumstances:

> (1) If the person is arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was operating a vehicle or a vessel while in an intoxicated condition[.]

from that is, clearly, the officer knew that my client was under the dose of a heavy narcotic that, clearly, changed her affect prior to the time he informed her of implied consent and asked for consent to take the blood test. Clearly, any consent would not be voluntary in that condition and in order for that test to come in, it needs to be voluntary. Same thing with regard to Miranda. It has to be a knowing waiver and it wasn't because she was, clearly, under the effect of Versed at the time. So that's why I'm, additionally asking that the Court suppress any statements made by my client, in that she couldn't have understood Miranda. Also, in that they would have been the fruit of this unlawful arrest made by the officer, who told you on direct that he didn't know what was going on.

The State responded:

Now, I understand Versed was given to her pre-Miranda. However, there has been no evidence today that tells us, first, it is a narcotic and that it would affect [Mire] in any way to make a consensual decision in consenting. Additionally, when officers read the AIR and the implied consent to someone who is being arrested for DWI, the first words they say are, you are being placed under arrest for driving while intoxicated. They then get to the AIR portion where the Defendant is told that – give me a second. Sorry. Where they are told again that they are being placed under arrest for DWI. And that if they refuse to submit to a blood test or a chemical test, that the officer will then apply for a search warrant.

At this point, the no refusal warning is read to every suspected driver of driving while intoxicated, regardless of whether she has been administered Versed or not. Officer Pyle observed indications of intoxication before she was given this medication. There has been no evidence to say that that medication could cloud her judgment of consenting to what Officer Pyle read to her on the form. Therefore, the State thinks that that argument is invalid and they have not proven or shown a defense that her consent could not be given because of that medication. We did not – the State did not provide anyone who could testify to that because that is not a requirement for that instance.

Defense counsel then responded:

The Court's allowed to use its common sense. We all know what Versed is. We all know it's a narcotic. And we also know from – I mean, they give that to you prior to getting surgery so you don't remember anything. Also, the officer testified that they had to give her the Versed to get her calmed down to put the IV in, so we have direct testimony that it did affect our client. And the law is very clear that my client – if somebody gets drunk and they're too drunk to understand their Miranda warnings or implied consent, that's voluntary intoxication and that doesn't count.

6

The law is very clear, though, that involuntary intoxication does count and the State's witness testified that Ms. Mire was involuntarily given Versed. That he testified that it affected her greatly. And so therefore, it is – they have to prove that my client knowingly – knowingly gave her consent and voluntarily gave her consent and knowingly waived any right to Miranda and nobody does that under Versed. And we're going to live in a very dangerous world if you can go and be doped up by the hospital and then the police come in and give you warnings and that's just too bad for you. And that's what they're stating here and it's not acceptable.

The trial court orally ruled from the bench:

The Court finds that the identification of [Mire] as the driver of the vehicle, the objection to that is overruled. The Court finds that any statements made by [Mire] prior to being administered the drug – obviously, the tranquilizing drug, and that he said that's what they gave it for, so they can calm her down to – so I don't – I don't think you have to know anything about Versed or not. But you know from the officer's testimony that they gave it to her to calm her down so that they could put the IVs in. So obviously, it was a tranquilizing drug and any statements she made after being given Versed, I'm going to suppress. Any statements she made prior to that, I'm not going to suppress.

So I don't know how that – exactly how that works because I don't know – I think she – I think she said that she drank the alcohol before they gave her the drug.

Then, the following exchange took place between the trial court and defense counsel:

[Defense counsel]: Yeah. And I think the remaining issue is, Judge –

THE COURT: The Miranda, they – clearly, he did the Miranda after the drug.

[Defense counsel]: Right. And then the other issue is that I'm asking to suppress the breath test because she couldn't knowingly consent to it, because she had been given the drug when she consented.

THE COURT: That will be sustained.

On March 11, 2024, the trial court entered its Order as follows:

The Court[], after hearing evidence and argument, finds as follows:

1.    There was probable cause to arrest [Mire] in this matter.

2.	As [Mire] was involuntarily administered Versed prior to being advised of implied consent and her Miranda warnings, and as the evidence at the hearing was that [Mire] experienced the effects of the drug prior to the giving of implied consent and her Miranda warnings, [Mire] did not knowingly and voluntarily consent to submit to the blood draw in this case. Therefore, the results of the blood draw in this case are hereby suppressed from evidence. Further, any statements made by [Mire], after she was administered Versed, are also suppressed from use in evidence.

	IT IS THEREFORE ORDERED by the Court that the results of the blood draw in this case are hereby suppressed from use in evidence. Further, any statements made by [Mire], after she was administered Versed, are also suppressed from use in evidence.

The State filed this interlocutory appeal.

**State's Points Relied On**

In four Points Relied On, the State claims the trial court erred, challenging the trial court's rationale for suppressing both evidence and statements in this case. Because the Order granting Mire's Motion to Suppress Physical Evidence and Motion to Suppress Statements, suppressing both Mire's blood draw results and statements, turn on one finding – that because Mire was involuntarily administered Versed and experienced its effects prior to being advised of implied consent and her *Miranda* warnings, Mire did not knowingly and voluntarily consent to submit to the blood draw in this case, or waive her *Miranda* rights – we address the points out of order. Due to our analysis and resolution of Point IV, neither of the trial court's rulings in its Order can stand, which renders discussion of the State's remaining points moot.

Point IV

The State contends in Point IV:

The trial court erred in granting [Mire's] Motion to Suppress Statements, suppressing any statements made by [Mire] after she was administered Versed because there was no violation of [Mire's] rights under the Fifth

8

Amendment or Sixth Amendment or under Article I, Sections 18(a) and 19 in that there was no evidence that [Mire's] dose of Versed prevented [Mire] from knowingly, intelligently, and voluntarily waiving her rights under Miranda.

## Standard of Review

This Court "will reverse a trial court's ruling on a motion to suppress only if it is clearly erroneous." *State v. Creutz*, 657 S.W.3d 303, 310 (Mo. App. S.D. 2022) (quoting *State v. Holman*, 502 S.W.3d 621, 624 (Mo. banc 2016)). Clear error requires us to be "left with a definite and firm belief a mistake has been made." *Holman*, 502 S.W.3d at 624 (quoting *State v. Bell*, 488 S.W.3d 228, 238 (Mo. App. E.D. 2016)). "The State has the burden at a suppression hearing to show by a preponderance of the evidence that a motion to suppress should be denied and the evidence should be admitted." *State v. Wright*, 585 S.W.3d 360, 367 (Mo. App. W.D. 2019) (internal quotations and citations omitted). An order suppressing evidence requires substantial evidence in support, and we construe the trial court's findings of fact, including reasonable inferences, favorably in support of the order. *State v. Johnson*, 354 S.W.3d 627, 631-32 (Mo. banc 2011). "The question of whether a criminal defendant's constitutional rights were violated is a question of law reviewed *de novo*." *State v. Gates*, 635 S.W.3d 854, 857 (Mo. banc 2021).

*State v. Proctor*, 681 S.W.3d 709, 712 (Mo. App. S.D. 2023). The State has the burden of production and persuasion to show by a preponderance of the evidence that a defendant's motion to suppress should be overruled at trial. *State v. Vandervort*, 663 S.W.3d 520, 524 (Mo. App. W.D. 2023).

## Analysis

In this case, the trial court found in its Order that because Mire "was involuntarily administered Versed" and "experienced the effects of the drug" prior to being advised of implied consent and her *Miranda* warnings, Mire did not "knowingly and voluntarily" consent to submit to the blood draw or make statements, therefore, the results of the blood draw and Mire's statements made after she was administered Versed should be

9

suppressed.[5]  In Point IV, the State contends the trial court erred in suppressing Mire's statements because there was no substantial evidence that Versed prevented Mire from knowingly, voluntarily, and intelligently waving her *Miranda* rights and making statements.  Conversely, Mire argues the trial court appropriately suppressed her statements because they were not knowing and intelligent in that she was under the influence of Versed, before Officer Pyle read her implied consent and her *Miranda* warnings.  She asserts the mere fact that she was involuntarily administered Versed precluded her knowing and intelligent waiver.  We disagree.

"When the admissibility of a defendant's statement has been challenged, the State bears the burden of demonstrating by a preponderance of the evidence that the defendant

---

[5] Nothing in the trial court's order references the specific statements of Mire that are suppressed. Further, the trial court fails to specifically find Mire's statements that are suppressed were made during a custodial interrogation, requiring Officer Pyle to advise Mire of her *Miranda* rights. *Miranda*, 384 U.S. at 444 (holding statements made to police during a custodial interrogation must be preceded by *Miranda* warnings in order for a statement to be admissible and an officer's obligation to administer *Miranda* warnings only attaches when there has been a restriction on a person's freedom as to render him in custody); *see also* **State v. Lammers**, 479 S.W.3d 624, 631 (Mo. banc 2016).  In fact, the record establishes the only statements Mire made after she was administered Versed were statements indicating she understood implied consent and her *Miranda* rights, and her verbal consent to provide a blood sample.  This Court is required to "presume the trial court found all facts in accordance with its ruling[,]" so we must presume that the trial court found Mire was in custody, and that there were statements made by Mire during an interrogation that were subject to *Miranda*. **State v. Selvy**, 462 S.W.3d 756, 764 (Mo. App. E.D. 2015).  This Court has previously ruled statements regarding implied consent are not testimonial or communicative nor an act coerced by law enforcement, and not protected by the privilege of self-incrimination.  Therefore, *Miranda* warnings are not required to be given prior to reading implied consent and requesting a defendant give a blood sample because a defendant can always choose to not take the test. **Proctor**, 681 S.W.3d at 714.

10

voluntarily, knowingly and intelligently made the statement." ***State v. Watkins***, 618

S.W.3d 265, 269 (Mo. App. E.D. 2021).

> Accordingly, a waiver of *Miranda* rights by a defendant must be both: (1) voluntary, meaning it was the product of free and deliberate choice and not of intimidation, coercion, or deception; and (2) knowing and intelligent, meaning it was made in full awareness of the rights being abandoned and the consequences of the decision to abandon them.

***State v. Gates***, 683 S.W.3d 726, 730 (Mo. App. E.D. 2024). To determine whether

Mire's waiver of her *Miranda* rights was valid – that she voluntarily, knowingly, and

intelligently waived her rights under *Miranda* – we consider the totality of the

circumstances. ***Watkins***, 618 S.W. 3d at 269. "[The totality of the circumstances]

inquiry depends on the facts and circumstances surrounding the case, including 'the

background, experience, and conduct of the accused[.]'" ***Id.*** (quoting ***Edwards v.***

***Arizona***, 451 U.S. 477, 482 (1981)).

In response to the State's arguments, Mire does not make any substantive

argument on appeal regarding any intimidation, coercion, or deception which would have

rendered her *Miranda* waiver involuntary. *See* ***Gates***, 683 S.W.3d at 730. Rather, Mire

claims the trial court properly suppressed her statements due to her mental condition after

she was involuntarily administered Versed while in the hospital. Because Mire's mental

condition alone is insufficient to show her statements were involuntary in the absence of

any evidence that she was coerced by Officer Pyle, we are left to decide whether there

was substantial evidence to support the trial court's suppression of her statements because

Versed prevented her from making a knowing and intelligent waiver of her *Miranda*

rights. *See* ***State v. Mendez-Ulloa***, 525 S.W.3d 585, 591-92 (Mo. App. E.D. 2017).

11

The trial court appears to have believed Officer Pyle's testimony about what occurred at the scene and at the hospital. The only point of divergence was what effect the administration of Versed had on Mire's ability to consent to the blood draw and waive her *Miranda* rights. No one presented any evidence on this specific factual issue. Instead, defense counsel simply argued, as a matter of purported common knowledge, that Versed was a "heavy narcotic" and that Mire was involuntarily intoxicated after she received it. Based upon that argument, the trial court drew an inference that Mire lacked the ability to consent and waive her rights due to involuntary intoxication by Versed. Because there was no evidence from which that inference could reasonably be drawn, the trial court's ruling was clearly erroneous. The reason is simple. It is well settled that whether or when a drug can cause intoxication is a matter for expert testimony, as the following cases demonstrate.

In ***State v. Falcone***, 918 S.W.2d 288 (Mo. App. S.D. 1996), the defendant was charged with operating a motor vehicle in a drugged condition. At trial, the State presented the following evidence. The defendant had struck a bridge while driving a vehicle. *Id.* at 290. She tested 0.0 for alcohol on the breathalyzer test, but she was talking to herself, acting strangely, failed two field sobriety tests, and kept walking out into a traffic lane. *Id.* at 290-93. The defendant had taken a dose of the prescription drug Lorazepam about two hours before the collision. *Id.* at 290. A chemistry professor testified that: (1) Lorazepam acted as a sedative which could impair and intoxicate someone; and (2) the level of the drug in the defendant's system was high enough to affect sensory and motor perception. *Id.* at 290-91. This Court held that the foregoing

12

evidence was sufficient to support the defendant's conviction for driving while intoxicated by Lorazepam. *Id.* at 292-93.

In *State v. Friend*, 943 S.W.2d 800 (Mo. App. W.D. 1997), the defendant was charged with driving while intoxicated. The following evidence was presented at trial. The defendant was stopped for driving in the wrong direction on I-70. *Id.* at 801. He was very nervous and jumpy. *Id.* The arresting officer smelled no odor of alcohol. *Id.* The defendant told the officer that "Mexicans were chasing him and were out to kill him and to cut his throat." *Id.* The defendant's pupils were constricted, and he failed two field sobriety tests. *Id.* When another officer asked the defendant to exit the police car, the defendant began to ramble about which officer was going to kill him. *Id.* The breathalyzer test administered on the defendant registered zero for the presence of alcohol. *Id.* The defendant agreed to a blood sample, which was taken and tested positive for methamphetamine. *Id.* At the jail, the defendant was restrained after he was observed screaming, yelling, kicking at the ceiling, and punching the wall. *Id.* There was no testimony as to the amount of methamphetamine in his system, the effect of the methamphetamine on his driving ability, or whether it would cause the behavior the defendant exhibited. *Id.* The defendant was convicted and challenged the sufficiency of the evidence on appeal. *Id.* The western district of this Court noted that "[d]rugs do not necessarily produce readily recognizable symptoms and behavior patterns. We are left to speculate whether the level of methamphetamine in the defendant's system was sufficient to cause the behavior described, and if so, whether the symptoms described were the result of methamphetamine or some other cause." *Id.* at 802. Thus, the driving while intoxicated conviction was reversed because "[t]here was no evidence to show that [the]

13

defendant's behavior, while abnormal, was consistent with identifiable symptoms of ingestion of methamphetamine that would impair the defendant's ability to drive. Significantly, there was no evidence that the level of methamphetamine, whatever the amount, was sufficient to impair his driving ability." *Id.* at 803.

In *State v. Clarkston*, 963 S.W.2d 705 (Mo. App. W.D. 1998), the defendant was an insulin-dependent diabetic. *Id.* at 708. On the day of the incident, he took his morning insulin at 7:00 a.m. *Id.* He worked until 7:30 or 8:00 p.m., when he went to a bar. *Id.* He reported drinking 8-11 beers. *Id.* Sometime between 9:30 and 10:00 p.m., the vehicle driven by the defendant collided with the rear of another vehicle stopped at an intersection. *Id.* The first officer on the scene noticed the smell of alcoholic beverages on the defendant and that his eyes were watery, glassy, and bloodshot. *Id.* The defendant failed a horizontal gaze nystagmus test and refused to take any other field sobriety tests because he was "too drunk." *Id.* He also refused to take a chemical breath test. *Id.* The State charged defendant with driving while intoxicated under the influence of a combination of alcohol and insulin, and the trial court gave an instruction to that effect. *Id.* at 708-10. On appeal, the defendant claimed that the evidence did not support the submission to the jury of intoxication based on a combination of alcohol and insulin. *Id.* at 710-11. The western district of this Court agreed:

> [I]n order to prove intoxication with a combination of alcohol and insulin, the State had to show that the insulin [the defendant] had taken at 7:00 a.m. that morning was still sufficiently in his system and combined with the alcohol to cause his intoxication. There was no such testimony. There simply was no evidence as to how much, if any, insulin would have remained in his system by 9:30 p.m. that evening. Even if we could assume some insulin remained, there is no evidence that it was "too much insulin," as might result in the type of reaction at issue here. Indeed, common sense indicates that even if [the defendant] had taken too much insulin at 7 a.m. that morning, he could not then eat lunch, drive to work, work for some

14

hours, all without any reaction, but then fourteen and one-half hours later have a reaction to the morning dose of insulin. *At a minimum, expert testimony was needed to support such a hypothesis.*

*Id.* at 714 (emphasis added).

Finally, in **State v. Hoy**, 219 S.W.3d 796 (Mo. App. S.D. 2007), the defendant was convicted of driving while intoxicated under the influence of drugs. *Id.* at 800. The trial evidence proved that, at the time of the alleged offense, the defendant was sleepy and sedated, had slowed reaction times, lacked coordination, had slurred speech, and moved slowly. *Id.* at 799. The defendant admitted ingesting hydrocodone, a pain medication, on the morning of the alleged offense and zolpidem, a medication for a sleep disorder, on the evening before the alleged offense. *Id.* at 800. An expert testified that both of these drugs were present in the defendant's urine specimen and both can cause sleepiness, slowed reaction times, a sedative effect on the central nervous system, lack of coordination, slurred speech, slower movements, and intoxication. *Id.* at 807. On appeal, the defendant argued that the evidence was insufficient to support his conviction. *Id.* at 800. This Court affirmed because the trial court "could reasonably infer from this circumstantial evidence that the presence of these two drugs in [the defendant's] body could cause [the defendant] to exhibit sleepiness, slowed reaction times, central nervous system depression (sedative effect), lack of coordination, slurred speech, slower movements, and intoxication." *Id.* at 807.

As these cases illustrate, whether Versed can cause intoxication, and if so, in what amount and how soon it would take effect, was a matter for expert testimony. None was presented. There is nothing in the record to show the amount of Versed Mire received and the effect of that dosage on her cognition. Therefore, the totality of the

15

circumstances, including Officer Pyle's testimony coupled with the lack of any evidence regarding the drug Versed and its effects on Mire's mental capabilities, establish Mire knowingly and intelligently waived her *Miranda* rights. "A knowing and intelligent waiver is 'normally shown by having a police officer testify that he read the accused his rights, asked whether the rights were understood, and received an affirmative response.'" *Watkins*, 618 S.W.3d at 269 (quoting *State v. Wise*, 879 S.W.2d 494, 505 (Mo. banc 1994), *overruled on other grounds by Joy v. Morrison*, 254 S.W.3d 885, 888 n.7 (Mo. banc 2008)). "The knowing and intelligent requirement does not mean that a defendant must know and understand all the possible consequences of the waiver." *Id.* (quoting *State v. Powell*, 798 S.W.2d 709, 713 (Mo. banc 1990)). The State met its burden here.

Based on our review of the record, there is substantial evidence to support the conclusion that the State proved, by a preponderance of the evidence, that Mire knowingly and intelligently waived her *Miranda* rights. The testimony of Officer Pyle, which the trial court appears to have believed, established that, after allowing Mire to receive medical care and calm down, he told Mire she was under arrest for driving while intoxicated. He then informed her of the no-refusal warning and implied consent and read her *Miranda* rights to her. Mire indicated she understood those rights. Officer Pyle then asked Mire if she would provide a blood sample, and Mire verbally consented to do so. Beyond this prima facie evidence presented by the State, the record is completely devoid of any evidence establishing Mire suffered any cognitive impairment. Other than evidence that Mire's physical movements calmed after she was administered Versed so IVs could be inserted, no evidence established any mental inabilities. There was no evidence of confusion or irrationality, and her answers were responsive to the questions

16

Officer Pyle asked. No evidence was presented from any source, including any testimony from Mire herself or an expert, of the residual effects or potential side effects of Versed or that taking Versed impaired her ability to make an intelligent, knowing waiver of her constitutional rights. Moreover, no expert testified about Versed at all, including the dosage Mire received, how her body would metabolize the medication, and its effects on Mire's cognitive capabilities. There is simply no evidence from which the trial court could reasonably infer that Mire's thinking was impaired as a result of Versed at the time she waived her *Miranda* rights. As such, the trial court made an unsupported inference that because Versed was "a tranquilizing drug" and Mire's physical actions calmed after being administered Versed, that it also affected her mental state without any medical evidence supporting it. Officer Pyle's testimony was sufficient to carry the State's burden that Mire was rational when she made statements to him that she understood her rights and consented to the blood draw.

This Court concludes that the evidence fails to demonstrate that Mire, although having been administered Versed prior to being read *Miranda*, was incapable of freely and rationally forming the intent to waive her *Miranda* rights. At most, the evidence established that Versed affected Mire's motor skills as her physical movements calmed such that she was able to receive medical attention after it was administered to her. There is simply no evidence in the record that Versed administered to Mire affected her decisional or cognitive capacity at the time she made statements. The arguments of defense counsel regarding Versed and its effects are not evidence. *See State v. McFadden*, 369 S.W.3d 727, 742 (Mo. banc 2012) ("The 'unsworn remarks of counsel in

17

opening statements, during the course of trials or in arguments are not evidence of the facts asserted.' *State v. Forrest*, 183 S.W.3d 218, 226 (Mo. banc 2006).")

Because no evidence supports the trial court's conclusion that Mire could not knowingly and intelligently waive her *Miranda* rights after having been involuntarily administered Versed prior to receiving her *Miranda* warnings, the trial court clearly erred in suppressing Mire's statements. Point IV is granted and the trial court's ruling suppressing Mire's statements is vacated. Further, given our ruling and analysis on Point IV, and because the trial court's ruling on Mire's Motion to Suppress Physical Evidence also hinges on the same argument that Versed affected Mire's cognitive ability to knowingly and intelligently consent to the blood draw, that ruling was also clearly erroneous and cannot stand. The trial court's ruling suppressing the blood draw is also vacated. As such, any further discussion of the State's remaining points is moot.

The trial court's Order granting Mire's Motion to Suppress Statements and Motion to Suppress Physical Evidence is vacated in its entirety and the cause is remanded for further proceedings consistent with this opinion.


JENNIFER R. GROWCOCK, C.J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

JACK A. L. GOODMAN, J. – CONCURS


18